SECOND RUSSIAN INSURANCE COMPANY *v.*
MILLER, ALIEN PROPERTY CUSTODIAN, ET
AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 362. Argued April 30, May 1, 1925.—Decided June 1, 1925.

After promulgation, in the earlier years of the World War, of a
Russian ukase forbidding, under penalties, all Russian subjects to
enter into any agreement or commercial relations with citizens of
enemy countries and proclaiming all contracts with enemy firms at
an end, an arrangement was made between a Russian insurance
corporation, a German firm of Hamburg, which was its general
agent for reinsurance business including that originating in this
country, and a New York corporation, which was the German
firm's sub-agent here and shared the commissions on the American
business, whereby, in form, the New York corporation was sub-
stituted as general agent and entitled to the full commissions on
the net premiums it collected. Thereafter, and before the United
States entered the war, the American agent collected premiums on
old business, but, instead of appropriating the full commissions to
which it was thus nominally entitled, retained only the percentage
which it would have had under the old arrangement and deposited
the rest in a special account in its name. Later, it turned over the
fund to the insurance company's trustee under the New York law.
The fund was seized by the Alien Property Custodian as belonging
to the German firm. Two courts below having found from the
evidence that the change of agency was colorable only, made to
evade the ukase, and that the deposit was intended by all parties
for the German enemies, *Held,* adopting that finding,

(1) That the agreement by which the commissions were set apart
for the German firm was valid by the law of the United States, as
it was also proven to be by the law of Germany. P. 558.

(2) That the insurance company, having consented that the German
firm should have the commissions and they having been actually
set apart accordingly, retained no legal interest entitling it to
reclaim them from the Alien Property Custodian. P. 559.

(3) *Semble* that comity does not require that extraterritorial effect
be given to the Russian ukase so as to make illegal, transactions
had in the United States between the insurance company and the

New York corporation respecting their dealings with the German firm. P. 559.

(4) Assuming that the payment was forbidden by the ukase, no principle of comity would entitle the Russian company to recover it back; the rule denying relief when both parties to an illegal executed contract are *in pari delicto*, would apply. P. 561.

(5) A right to a fund in the hands of a depositary is not divested by the act of the latter in merely turning it over without consideration to a trustee holding other funds and securities for an adverse claimant. P. 562.

297 Fed. 404, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which dismissed the appellant's bill, brought under the Trading with the Enemy Act to recover money seized by the Alien Property Custodian, and held by the Treasurer of the United States, as the property of a German firm.

*Mr. Albert P. Massey,* for appellant.

*Mr. Hartwell Cabell,* with whom the *Solicitor General* was on the briefs, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

Appeal from a judgment of the United States Circuit Court of Appeals for the Second Circuit affirming a judgment of the United States District Court for the Southern District of New York, dismissing a bill in equity brought by the appellant, complainant below, under § 9 of the Trading with the Enemy Act (Act of October 6, 1917, 40 Stat. 419) to recover money seized and held by the Alien Property Custodian. 297 Fed. 404.

The appellant, a Russian corporation, in 1913 established an office in the State of New York for the conduct of an American reinsurance business in that State. In order to comply with the law of the State and to qualify it to do business there, appellant deposited with the New York Life Insurance & Trust Co., as trustee under a trust

deed, money and securities subject to the provisions of the New York Insurance Law and appointed Meinel & Wemple, Inc., a New York corporation (referred to as Meinel in this opinion) its statutory agent and attorney in fact in New York. In January, 1919, the Alien Property Custodian served upon the New York Life Insurance & Trust Co. and Meinel a demand that they pay over to him money in a specified amount held by them for the account and benefit of H. Mutzenbecher, Jr., a co-partnership of Hamburg, Germany, alien enemies not holding a license granted by the President under the Trading with the Enemy Act. The money was paid to the Alien Property Custodian pursuant to the demand and now constitutes the subject matter of this suit. The Mutzenbecher firm filed an answer making claim to the money seized as commissions earned by them under an agency contract with appellant and praying that it be decreed to be their property and be retained by the Alien Property Custodian in accordance with the provisions of the Trading with the Enemy Act.

The firm of Mutzenbecher was engaged in business as managers of a reinsurance " pool " in Hamburg, Germany, and as such managers represented a number of fire insurance companies, including the appellant, as members of the pool which was formed for the purpose of sharing and redistributing reinsurance business contributed to the pool by its various members. They were in complete control of the pool and received as compensation for their services a fixed commission based on the annual net premium upon reinsurance or retrocession contracts (that is, contracts reinsuring reinsurers) plus a stipulated percentage of the annual net profit of the total business conducted by the pool.

For a considerable period before the outbreak of the world war, Meinel acted as sub-agent for the Mutzenbechers in the negotiation of the reinsurance business of

the appellant and of several other insurance companies for whom they acted in effecting the distribution and allotment of reinsurance risks.  In the ordinary course of business, Meinel, acting for the appellant, entered into treaties with companies writing direct insurance in the United States, whereby appellant undertook the reinsurance of risks insured by those companies.  Premiums for this reinsurance were collected by Meinel from the companies which had thus ceded insurance to appellant and after depositing the required reserve for unearned premiums with the Trustee of appellant, pursuant to the New York statute, the balance, together with documents giving particulars of all reinsurance to be effected by the Mutzenbechers for account of appellant, was transmitted to them in Hamburg.  From the premiums thus received, the Mutzenbechers paid the expenses of their business, including their own commissions amounting to 3½%, and remitted to Meinel in New York out of their own commission, certain expenses and ¾ of 1% of the premiums thus transmitted, as commissions to Meinel for doing the business in New York.  This continued to be the method of doing business after the outbreak of the world war until January 1, 1915, when the remittances from Meinel to the Mutzenbecher firm ceased because of war conditions.  During the calendar year 1916, until November, Meinel paid to the Mutzenbechers from premiums received 2½% commission payable to them and retained its own commissions and expenses.

In October, 1916, the Russian Government promulgated a ukase by the terms of which all Russian subjects were forbidden to enter into any agreement or commercial relations whatever with citizens of enemy countries and which proclaimed that all existing relations, by virtue of contracts, with enemy firms must be considered as at an end from the date of promulgation.  Violation of the decree was punishable by imprisonment and fine.  The ap-

pellant, which up to that time had continued its ordinary business relations with the Mutzenbechers, then found it necessary to terminate its relations with them, which it did, in form at least, by the appointment of Meinel, as its general agent, to effect reinsurance and to carry on the business which had previously been carried on by the Mutzenbechers at Hamburg. By the terms of this appointment Meinel was appointed general agent for the appellant, authorized to effect reinsurance for appellant's account, and to retain for itself as compensation for handling the business, commissions at the rate of $3\frac{1}{2}\%$ of the net premiums received.

The principal question of fact presented for consideration by the courts below was whether this transfer of the general reinsurance agency from the Mutzenbechers to Meinel was made in good faith or whether it was formal only, and a mere cover under which the business was intended to be conducted by the Mutzenbechers as it had been previously conducted. On that question of fact, both the District Court and the Circuit Court of Appeals found for the Alien Property Custodian and against the appellant. That finding we adopt. The evidence was sufficient to support it and will not be discussed here, except insofar as it may be necessary to indicate what the legal relationship of Meinel to the Mutzenbechers was, so that the question of law presented here may be adequately dealt with.

No further remittances were made by Meinel to the Mutzenbechers after November 22, 1916, but it deducted from all net premiums received $3\frac{1}{2}\%$ commission as stipulated by its agency appointment. Of the commission thus deducted it retained for itself a commission of $\frac{3}{4}$ of $1\%$ plus its expenses and the balance was deposited in a special bank account in its name and carried on its books as a " suspense reserve account." The account remained undisturbed until July 26, 1918, when, the Alien

Property Custodian having begun an investigation of the books and records of Meinel, the fund which is the subject of this suit was then turned over by it to the New York Life Insurance & Trust Co., the trustee for appellant, and was by it later paid over to the Alien Property Custodian.

The inference drawn by the courts below from these facts and from voluminous testimony which need not be here reviewed was that the transfer of the agency from the Mutzenbechers to Meinel was merely colorable; that the commissions segregated in the suspense reserve account which were commissions from old business, that is, premiums earned under reinsurance treaties effected before the transfer of the agency, notwithstanding the formal terms of the written appointment of Meinel, were commissions to which Mutzenbecher was entitled under the contract or arrangement existing between Mutzenbecher, Meinel and appellant before the transfer of the agency and that Meinel had in fact received and set them apart as the property of the Mutzenbechers. These findings, so far as they relate to what the parties did in these somewhat complicated transactions, and the purpose and intent with which they acted, deal with questions of fact and, as they are supported by the evidence, they are controlling here.

The proposition of law which is presented, and on the basis of which we are asked to reverse the judgment below rests upon the asserted illegality of appellant's own conduct. It is argued that the effect of the Russian ukase of October 29, 1916, was to make unlawful the agency of the Mutzenbecher firm for appellant and all further relations between them; that the Mutzenbechers were accordingly not entitled to earn or receive further commissions even from " old business "; that the fund segregated in the suspense reserve account by Meinel was therefore at all times property of appellant and not subject to seizure by the Alien Property Custodian since the illegal conduct of ap-

pellant had prevented the acquisition of any rights in the fund or against the appellant by the German firm.

To sustain this proposition it is necessary for the appellant to maintain, (1) that it has retained some form of legal interest in the 3½% commission deducted by Meinel under the terms of its agency appointment of November 1916; and (2) that the Russian ukase should be given an extra-territorial effect such as to render the acts of the appellant within the United States, which were otherwise lawful and proper according to the laws of the United States, unlawful and void, and thus prevent the Mutzenbecher firm from acquiring any interest in the segregated fund.

We think appellant does not succeed in establishing either proposition. Although Meinel was the statutory agent of appellant in the State of New York and transacted there certain business for the appellant, it was also, and had been for many years before the outbreak of the war, the sub-agent of the Mutzenbechers in handling the business which was transmitted to the German firm to be distributed in the reinsurance pool. The commissions for this service were paid to Meinel by the Mutzenbechers. After the outbreak of the war it became their agent to receive and remit to them commissions for carrying on the reinsurance business for appellant. When the colorable transfer of the Mutzenbechers' agency was made to Meinel, it was accepted by Meinel only after it was authorized to do so by the Mutzenbechers. Appellant having formally authorized Meinel to deduct and retain 3½% commission for conducting the business, and Meinel having actually deducted and retained it, and the court having found that that portion of the commissions placed in the suspense account was placed there by Meinel for the benefit of the Mutzenbechers, with the knowledge and consent of the appellant, and they having formally claimed the segregated fund, we are unable to see that the appel-

lant is in any different situation with respect to this fund than it would have been if it had paid over the commissions directly to the Mutzenbechers or to their authorized agent.

At the time the agency was transferred to Meinel, the United States was at peace with Germany. The action of Meinel, an American corporation controlled by American stockholders, in taking over the German agency, did not violate any law or policy of the United States. It was not unlawful for it to stipulate that it should receive commissions for doing the business or to agree to receive them for the Mutzenbechers, and having received them, it was not unlawful for it to hold the commissions as the agent of the German firm for its account and benefit. Whatever view we take of the arrangement entered into by the appellant with Meinel, appellant can claim under it no ownership in the deducted commissions. By appellant's formal agreement with Meinel, it relinquished all claims to the commissions. By the secret understanding between appellant, Meinel and the Mutzenbechers, the segregated fund was received and held for account of the Mutzenbechers. Until the declaration of war by the United States against Germany, the Mutzenbechers in this state of facts could have maintained a suit against Meinel for an accounting and payment over of the segregated fund. *Hilton* v. *Guyot*, 159 U. S. 113; *Taylor* v. *Benham*, 5 How. 233, 274; *National Bank,* v. *Insurance Co.*, 104 U. S. 54; *Kohler* v. *Board of Commissioners*, 89 Fed. 257, 260; *Pennsylvania Steel Co.* v. *N. Y. Central R. R. Co.*, 206 Fed. 663, 665; *In re Interborough Corporation*, 288 Fed. 334, 347.

In view of the legal relationship existing between Meinel and the Mutzenbechers and the legal consequences which flow from it, we find it unnecessary to speculate as to the precise meaning and effect of the Russian ukase. The Circuit Court of Appeals below rejected the conten-

tion that it should be given extra-territorial effect so as to make illegal the transactions had in New York between appellant and Meinel with respect to their dealings with the German firm. Certainly such an application of foreign law to acts done within the territorial jurisdiction of the forum carries the principle of the adoption of foreign law by comity much beyond its limits as at present defined, the more so as the contract between a Russian and a German which we are asked to hold illegal on the basis of Russian law is shown by the expert testimony in the case to be valid according to the German law. The contention runs counter to the reasoning of such cases, as *Bank of Augusta* v. *Earle,* 13 Pet. 519, 598; *Hilton* v. *Guyot,* 159 U. S. 113; *Hervey* v. *R. I. Locomotive Works,* 93 U. S. 664; *Rose* v. *Himely,* 4 Cranch 241; *Polydore* v. *Prince* 19 Fed. Cas. No. 11257; *Dike* v. *Erie R. R.,* 45 N. Y. 113. Nor does *Canada Southern Ry. Co.* v. *Gebhardt,* 109 U. S. 527, relied upon by appellant, support the contention. That case only laid down the doctrine recently affirmed by this Court (*Modern Woodmen of America* v. *Mixer,* 267 U. S. 544) that the legal relations of the members of a corporation to the corporation and to each other must be regulated and controlled by the law of the jurisdiction in which the corporation is organized, and it extended the doctrine so as to make it applicable to mortgage security holders having a common interest in the corporate property. The Russian ukase however did not purport to regulate the internal relations of the corporation to its members or lien holders. By its terms it is applicable indiscriminately to individuals and all classes of associations and corporations, and apparently undertakes to deal with contracts of every kind. It cannot be brought within the purview of the rule established in *Canada Southern Railway Co.* v. *Gebhardt* and *Modern Woodmen of America* v. *Mixer, supra.*

If, however, it be assumed that its true meaning and purpose was to control extra-territorially, Russian sub-

jects, and that it not only imposed penalties on Russian nationals for its violation, but rendered unlawful and void all contracts and commercial intercourse within our own territory, between Russian nationals and Russian enemies, we still do not find in that assumption any basis for the reversal of the judgment below. Had the obligation of appellant to pay the commissions in question remained executory, the assumption that our courts should give an extra-territorial effect to the Russian ukase and disregard the German law affecting the rights of the Mutzenbechers upon their contract with appellant to be performed in German territory, might have been of some avail to it. But as we have seen, the findings of the court below establish that payment of the commissions was made as effectually as if the payment had been by cash in hand. When Meinel set apart the fund for the Mutzenbechers nothing further remained to be done by appellant with respect to the payment. It had relinquished all claim to the fund and Meinel held it for the Mutzenbechers. When the United States declared war, the fund was one held by an American national for the benefit of an alien enemy and on passage of the Trading with the Enemy Act (October 6, 1917), it became its duty to report the fund to the Alien Property Custodian (Trading with the Enemy Act, Section 7-a, 40 Stat. 416) and to surrender it to the Custodian on demand (Section 7-c, 40 Stat. 418).

To hold that money thus situated was not subject to the seizure and retention, under the provisions of the Trading with the Enemy Act, would be going very far; but quite apart from the operation of that Act, we find no basis for the contention that the principle of comity would require us to recognize any right in appellant to recover back the money thus paid because the payment of it was forbidden by the Russian ukase. No foundation.

55627°—25——36

for it in the Russian law is suggested. By our own law payments made under contracts which are illegal where the parties are *in pari delicto* may not ordinarily be recovered. The law leaves the parties where it finds them and gives no relief. *Thomas* v. *City of Richmond*, 12 Wall. 349; *Higgins* v. *McCrea*, 116 U. S. 671, 684; *White* v. *Barber*, 123 U. S. 392, 423; *Dent* v. *Ferguson*, 132 U. S. 50; *St. Louis R. R.* v. *Terre Haute R. R. Co.*, 145 U. S. 393, 407; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244, 294; *Barrington* v. *Stucky*, 165 Fed. 325, 330; *Levi* v. *Kansas City*, 168 Fed. 524. While there are exceptions to this rule, appellant's case does not fall within any recognized exception and the record suggests no special considerations of equity or of our own public policy which would justify an exception in this case.

We therefore reach the conclusion that the appellant was not entitled to recover the fund as against the Mutzenbechers. Such being the rights of the parties, while the fund remained in the hands of Meinel, their rights could not be altered to the prejudice either of the Mutzenbechers or that of the Government by payment over of the fund by Meinel to the trustee for appellant. The trustee was not a purchaser and could not take the fund free of the legal or equitable rights of the Mutzenbechers, *National Bank* v. *Insurance Co., supra*, although it might and did discharge itself under the provisions of the Trading with the Enemy Act by payment of the money over to the Alien Property Custodian. (Trading with the Enemy Act, § 7-e, 40 Stat. 418.)

The appellant establishes no right in the fund which is the subject of litigation; we find no error in the record.

The judgment of the Circuit Court of Appeals is

*Affirmed.*