## UNITED CIGARETTE MACH. CO., Inc., v. CANADIAN PAC. RY. CO.

(Circuit Court of Appeals, Second Circuit. June 1, 1926.)

No. 340.

**1. Corporations ⟷116.**

Ownership of stock, and any right, title, or interest therein secured by its purchase, must be determined by the law of place of incorporation.

**2. War ⟷15—Purchaser from German of stock of Canadian Custodian, while orders respecting trading with enemy were in effect in Canada, held to have acquired no right to transfer till consented to by Canadian Custodian, and by Custodian's release not to have acquired right to interest on dividends.**

One purchasing, during World War, stock of Canadian corporation, and receiving indorsed certificate from German owner, when Canadian consolidated orders respecting trading with the enemy, and having the force of law in Canada, provided that no transfer made by any enemy of securities shall confer on the transferee any rights in respect thereof, acquired no right to transfer of the stock by the assignment till consented to by the Canadian Custodian, who in the meantime was by court order, pursuant to the consolidated orders, vested with the right and title to such shares, together with all interest or dividends accrued or to accrue, so that purchaser acquired no right to interest on dividends; the Custodian relinquishing and releasing the stock and accrued dividends only, and Treaty of Peace order forbidding payment of such interest.

In Error to the District Court of the United States for the Southern District of New York.

Suit by the United Cigarette Machine Company, Inc., against the Canadian Pacific Railway Company, to recover interest on dividends. Decree for defendant and plaintiff brings error. Affirmed.

Burroughs & Brown, of New York City (H. Lewis Brown and Wm. Harvey Smith, both of New York City, of counsel), for plaintiff in error.

Martin Conboy, of New York City (Henry T. Hall, of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error is a Virginia corporation, and on November 28, 1916, purchased 1,300 shares of common stock of the Canadian Pacific Railroad Company, with accrued and unpaid dividends from July 31, 1914, from two foreign banks, German corporations. The stock was not transferred, but the certificate was indorsed and delivered to the plaintiff in error. On May 28, 1920, the plaintiff in error demanded the transfer of the shares on defendant in error's books, which was refused until November 8, 1923.

A state of war existed between the Dominion of Canada and its associated and allied powers and the German Empire from the 4th of August, 1914, to the 20th of June, 1919. On May 2, 1916, the Governor General of Canada, under authority vested in him (War Measures Act 1914), put in force certain orders in council, known as "Consolidated Orders Respecting Trading with the Enemy," which was published pursuant to Canadian law, and which had the force and effect of law throughout the Dominion of Canada, and which provided, among other things, that "no transfer made * * * by * * * any enemy of any securities shall confer on the transferee any rights or remedies in respect thereof." Section 6 (1). Trading with the enemy is defined in section 3, subdivision 4, as "aiding or abetting any other person, whether or not such person is in Canada to enter into, negotiate, or complete any transaction * * * which, if effected or done in Canada," etc. "Securities" is defined by section 1 (1) (d), so as to "extend to and include stocks, shares." These provisions of the orders of council were ratified for the German holders of the stock by the terms of the Treaty of Versailles between Germany and Canada and its allies. When the stock was transferred, dividends were paid, but interest on the dividends was not paid. This action is for interest at 6 per cent. from the date dividends were demanded. The contention is that they were then due and payable.

[1] The ownership of the stock must be determined by the law of the place where the corporation was incorporated. "A corporation * * * must dwell in the place of its creation, and cannot migrate to another sovereignty." Bank of Augusta v. Earle, 13 Pet. 588 (10 L. Ed. 274). As here, it may do business in other places, including the United States, if its charter allows it so to do, and it has complied with the local laws of the state wherein it does business within the United States. Canada Southern Railway Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 27 L. Ed. 1020; Railroad v. Koontz, 104 U. S. 12, 26 L. Ed. 643. In Canada Southern Railway Co. v. Gebhard, supra, it was said: "But, wherever it goes for business, it carries its charter, as that is the law of its existence, * * * and the charter is the same abroad that it is at home." Where authorized to do business in other jurisdictions, it is still subject to the law of the home of its creation, and to the limitations placed upon it in the jurisdiction wherein it was doing business.

[2] Any rights, title, or interest in the stock which the plaintiff in error secured by its purchase in November, 1916, is necessarily tested by the effective Canadian laws. In November, 1916, when the plaintiff in error obtained a delivery of the certificates from the German bank corporations, the shares could not be transferred under the Canadian law, for the property at that time, as enemy owned, was vested in the Canadian Custodian and the plaintiff in error obtained no right to a transfer of the stock. The plaintiff in error got neither a chose in action nor the shares themselves. On April 23, 1919, by reason of the vesting order, the Canadian Custodian became vested of this property. This was pursuant to a court order entered in the Province of Quebec, and by it all right, title and interest in and to the shares of stock mentioned, together with all interest or dividends accrued or to thereafter accrue, was vested in the Custodian pursuant to section 23, subdivision 1, of the Consolidated Orders (Canada). This was a capture by the Canadian Custodian, and therefore at this time there was no interest on the stock due plaintiff in error.

But on October 25, 1923, the Custodian, by virtue of the power conferred upon him by paragraph 2, section 26, of the Treaty of Peace with Germany, Order 1920, relinquished and released the shares of stock, with all accrued dividends which were payable in respect thereof, and the defendant in error was authorized to make such transfer and to do such acts as were necessary to give effect to such relinquishment or release. This was done. It was the only authorization to the railroad company, and it did not include interest. If there be any interest accrued and payable on the dividends, such interest was

due and payable to the Custodian, who was vested with the property, and such Custodian did not release or relinquish this interest. On the contrary, on the 14th of April, 1920, the Governor General of Canada put in force an order, known as Treaty of Peace (Germany) Order 1920, which had the force and effect of law throughout Canada, and provided (section 23) that the proceeds of liquidation by the Custodian must be accounted for as provided by the Treaty of Peace, and it forbade payment of interest on dividends.

The Treaty of Versailles (section 4, annex section 14), concerning the provision regarding property rights and interest and method of payment, provides that the proceeds of liquidation of enemy property rights and interest should be disposed of in accordance with the annex to section 3, one provision of which (section 22) provides: "Interest shall not be payable on sums of money due by way of dividends, interest or other periodical payments which themselves represent interest on capital." The British Empire and Canada were parties to this treaty and accepted these terms.

Rights regarding transfer of stock of a corporation or liens attaching thereto must be determined by the law of the place of incorporation. Hammond v. Hastings, 134 U. S. 401, 10 S. Ct. 727, 33 L. Ed. 960; Modern Woodmen of America v. Mixer, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384; Second Russian Ins. Co. v. Miller, 268 U. S. 552, 45 S. Ct. 593, 69 L. Ed. 1088. The question of who must be recognized as the shareholders is to be determined by the law of Canada; likewise, whether or not interest is payable.

Direction der Disconto-Gesellschaft v. U. S. Steel Corporation, 267 U. S. 22, 45 S. Ct. 207, 69 L. Ed. 495, we think consistent with these views. That case presented a question of ownership of stock certificates which was to be determined by the laws of New Jersey. Justice Holmes said for the court:

"Therefore New Jersey having authorized this corporation like others to issue certificates that so far represent the stock that ordinarily at least no one can get the benefits of ownership except through and by means of the paper, it recognizes as owner any one to whom the person declared by the paper to be owner has transferred it by the indorsement provided for, wherever it takes place. It allows an indorsement in blank, and by its law as well as by the law of England an indorsement in blank authorizes any one who is the lawful owner of the paper to write in a name, and thereby entitle the person so named to demand registration as owner in his turn upon the corporation's books. But the question who is the owner of the paper depends upon the law of the place where the paper is."

This is quite a different question from determining the ownership of the stock, as here, and, as pointed out in that case, the United States had not taken steps to assert its paramount power; for it was observed by the Supreme Court that, "as in Miller v. Kaliwerke Aschersleben Aktien-Gesellschaft [C. C. A.] 283 F. 746, a different question would arise, that we have no occasion to deal with. The United States has taken no such steps. It therefore stands in its usual attitude of indifference when title to the certificate is lawfully obtained."

We hold that the plaintiff in error did not acquire any right to a transfer of the stock by the assignment of November, 1916, until consented to by the Canadian Custodian. When the Custodian transferred the stock to it on November 8, 1923, he transferred no claims for or right to interest on dividends.

Judgment affirmed, with costs.