HEYWOOD BOOT & SHOE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50108. Promulgated February 23, 1934.

*F. R. Carnegie Steele, Esq., R. Kemp Slaughter, Esq.*, and *Hugh C. Bickford, Esq.*, for the petitioner.
*Prew Savoy, Esq.*, for the respondent.

OPINION.

SEAWELL: Petitioner in this proceeding seeks a redetermination of a deficiency asserted by the Commissioner against it for the fiscal year ended October 31, 1926, in the sum of $16,253.83. The whole

amount results from the action of respondent in disallowing a deduction of $125,000 paid as extra compensation to petitioner's officers and claimed by the petitioner in its income tax return for that year as an ordinary and necessary expense of its business.

Most of the facts involved are stipulated, and the stipulations are accepted as our findings of fact by reference, and only so much thereof as is considered necessary for the understanding of this opinion is quoted. The facts stipulated are in some minor particulars contradictory, and these we have reconciled as far as possible. The facts deduced from the oral evidence on the hearing are also stated in this opinion.

Petitioner is a Massachusetts corporation located at Worcester in that state, and is a manufacturer of men's shoes. The business was founded in 1864 by Samuel R. Heywood and operated by him individually until 1884, when he caused it to be incorporated with an authorized and issued capital stock of 1,000 shares of a total par value of $100,000, which has never been changed. Bertram S. Newell was employed by the corporation in 1887, and served in the office and factory in various capacities before 1900, when he became an executive officer. In 1913 he was promoted to the position of vice president and treasurer. In 1900 Albert S. Heywood, son of Samuel R. Heywood, became an executive officer of the corporation, and, upon the death of his father in 1913, became president of the corporation. In 1911 Chester D. Heywood, a nephew of Albert S. Heywood and grandson of Samuel R. Heywood, was employed by the corporation as a factory worker, later as a salesman, and in 1913 in an executive position as assistant treasurer. Since 1913, and including 1926, Albert S. Heywood has been president, Bertram S. Newell has been vice president and treasurer, and Chester D. Heywood has been assistant treasurer, the three constituting the board of directors, and the corporation has employed no other executive during that time. The corporation in 1926 and prior thereto had an average of 375 factory employees, 8 office clerks and 10 salesmen. The salesmen sold about 90 percent of the output of the factory and each received compensation in amounts ranging from $7,000 to $8,000. Net sales per books of petitioner for the taxable year 1926 were in the amount of $1,604,687.27.

During the taxable year 1926 the executives held the stock of the corporation as follows:

Albert S. Heywood_____ 539 shares
Bertram S. Newell_____ 25 shares
Chester D. Heywood_____ 103 shares

The other 333 shares were held by the children of Albert S. Heywood (45 shares) and the brothers and sister of Chester D. Heywood (288 shares).

Albert S. Heywood graduated in 1892 from the Massachusetts Institute of Technology, with the degree of Bachelor of Science in electrical engineering, and served as a district engineer for the General Electric Co. from 1892 to 1899. In 1900, upon assuming charge of the factory of petitioner, he found the plant was using gas illumination and a small, inefficient sliding-valve engine for power. Using his engineering knowledge and experience, he installed a modern electric lighting plant more efficiently arranged, and a new steam power plant, and from that time has handled the engineering and architectural work of the corporation, making unnecessary the employment of an engineer for such purpose. He also has handled since that time the credit and financial operations of the petitioner's business, and has built up its credit so that money could be borrowed without personal endorsement and in amounts needed. He also caused the petitioner to purchase, after 1913, the real estate which it was using, but which belonged to the estate of Samuel R. Heywood, the founder. Albert S. Heywood, while so serving the petitioner corporation, was a trustee of the Peoples Savings Bank and a vice president and member of the finance board and a director of the Mechanics National Bank, which later became the Worcester County National Bank and was affiliated with the Worcester Bank & Trust Co. He was also a director of the State Mutual Life Insurance Co. These positions lent prestige to him and were of advantage to petitioner in securing low interest rates on its loans, which were in his charge. How much of his time in 1926 was taken by his duties in these corporations was not shown in evidence, but there was no evidence of neglect of duties to petitioner.

Bertram S. Newell, after service in various departments, became superintendent of petitioner's factory in 1901. He had supervision of buying, at first consulting with foremen in purchasing leather; he waited on customers who came to the factory; he did cost accounting and fixing of prices of the manufactured products of the factory; he built up a wide range of styles and lasts which he designed and which became an important factor in the success of the business; he had charge of the labor, and maintained friendly relations with the laborers, and saw that group insurance was carried and the employees pensioned or their wages paid in case of disability or sickness. No labor trouble occurred while he was in charge.

Chester D. Heywood, since becoming a director in 1913, has worked in conjunction with Albert S. Heywood and Bertram S. Newell, assisting in the work of inspection and modernization of the plant, managing petitioner's retail store at Worcester, looking after and directing the advertising, keeping in contact with certain customers, and in directing the general policies of the petitioner. He was a

trustee of the Peoples Savings Bank and a director of the Mechanics National Bank, which connections aided petitioner in obtaining low rates on loans. What part of his time was required by these connections was not shown; but there was no evidence of neglect of petitioner's business.

The three executives ran the whole business of petitioner. They formed a fixed policy in reference to their salaries. At their first meeting of the year they would vote the amounts of their respective fixed salaries, with an understanding among themselves that at the end of the year, if the results of their labors showed profits, they would be paid accordingly; that is, after the declaration of liberal dividends on the outstanding capital stock and the payment of their fixed salaries, they would take the profits and make what in their judgment they considered a fair distribution of them between the three executives, the amount allotted to each under this program added to his fixed salary being considered by them as fair compensation for the services rendered by such payee. This distribution did not include the exact amount of all the profits and was not limited by the profits, as provision in earlier years was made for the accumulation of ample reserves which on occasion could be invaded. Previous to the taxable year 1926 petitioner had built up and during that year had an earned surplus of about $1,000,000.

During the year 1926 the three executives were industrious and efficient and usually reached the office of petitioner at about 8 o'clock in the morning and remained until about 5 o'clock in the afternoon, taking time out for lunch. For some time Newell was in a sanitarium during the year. Petitioner's accounting was on an accrual basis.

On January 11, 1926, the directors of petitioner corporation by resolution fixed the salaries of the respective officers for the fiscal year ending October 31, 1926, which were paid by petitioner as follows:

| | |
|---|---|
| Albert S. Heywood | $16, 150 |
| Bertram S. Newell | 18, 900 |
| Chester D. Heywood | 11, 050 |

On December 27, 1926, at the annual meeting of the directors following the close of the fiscal year ended October 31, 1926, the board of directors declared a 56 percent dividend on the capital stock of the corporation, payable in four installments at stated times, and also by resolution voted extra compensation to themselves as executive officers of the corporation for that year in the following amounts which were paid by petitioner: To Albert S. Heywood and Bertram S. Newell, each $45,000; and to Chester D. Heywood, $35,000, a total of $125,000. In petitioner's income tax return for that year this amount, together with $46,100 fixed salaries, making a total of

$171,100, was reported and taken as a deduction from gross income as an ordinary and necessary expense of petitioner's business during the year. Upon audit of the return respondent disallowed $125,000, the whole deduction for extra compensation to the executives.

During the fiscal year ended October 31, 1926, petitioner had an operating loss of $9,669.46, but a net profit from securities of $24,661.89, and reported a net loss of $3,853.41. The disallowance by respondent of the $125,000 extra compensation to the executives left petitioner with a net gain for the year of $121,146.59.

Under section 234 (a) (1) of the Revenue Act of 1926, applicable here, among the deductions allowed corporations in computing their net incomes is included " a reasonable allowance for salaries or other compensation for personal services actually rendered." Reasonableness of the salary or compensation is the test of deductibility. *Becker Bros.* v. *United States*, 7 Fed. (2d) 3; *United States* v. *Philadelphia Knitting Mills Co.*, 273 Fed. 657.

Petitioner, in undertaking to show that the extra compensation allowed its executives in the fiscal year 1926 was reasonable, offered in evidence, over the objection of respondent, the stipulation of facts filed herein, which disclosed that for the years 1923 and 1924 and the first ten months of 1925 (the year in which petitioner changed from a calendar to a fiscal year basis for accounting) extra compensation of $125,000 for each of these periods was paid said officers and not contested by respondent. However, those periods are not before us, and the reasonableness of extra compensation paid the officers in the year here under review cannot be determined by what may have been done or omitted in other years.

Petitioner, for the same purpose, offered the evidence of Ward Melville, president of a corporation operating 490 retail shoe stores, " the largest retailers in leather shoes in the country." He testified that in his opinion the extra compensation here in question was reasonable and proper as such for the services performed. His opinion was not based on any peculiar or expert knowledge of salaries or other compensation usually paid individual executives in the shoe-manufacturing business, but was apparently based upon a philosophy of his own to the effect that, as petitioner's business was practically a family business, owned principally by the three directors, when proper provision had been made for the payment of liberal dividends on the capital stock of the corporation and the reserves were ample and previous earnings had been " salted away ", all of which he understood had been done in this case, the directors, having caused the earnings by their skill and ability, were entitled to what remained to be taken up as salaries without regard to the amount thereof,

unless there was a large body of outside stockholders who might object. We are unable to subscribe to this philosophy as applied to the taxing statute under review. Reasonable compensation deductible as an ordinary and necessary expense of carrying on a business, as allowed by the statute, is " such as the taxpayer would expect to give to a stranger equally qualified for similar services." *Meyer Hecht*, 2 B.T.A. 319, 323. In affirming the Board's decision on appeal in the *Hecht* case, the court said:

\* \* \* The intent and meaning of the statute is plain that a deduction of the kind sought to be taken cannot be made unless the expense is reasonable and ordinary, and the statute does not permit the deduction to be made under some other guise. [*Hecht* v. *United States*, 54 Fed. (2d) 968; certiorari denied, 268 U.S. 560.]

Petitioner also offered as witnesses its president, Albert S. Heywood, and vice president, Bertram S. Newell, who each testified that in his opinion the extra compensation of $125,000 for the executives in 1926 was reasonable under all the circumstances. They professed no knowledge or information as to compensation usually paid to others under like circumstances. Heywood testified that he " did not know a thing about " the usual compensation paid executives in the shoe industry except in his own company. Their testimony in the main coincided with the philosophy and deductions of Melville. The burden is on the petitioner and that burden is best carried by those who labor without prejudgment or self-interest. Chester D. Heywood, who received $10,000 less extra compensation than either Albert S. Heywood or Bertram S. Newell, and several thousand dollars less in fixed salary for the year, did not testify.

Petitioner stressed before us " the fact that since these executives have had charge of the business they have earned the dividends for such stockholders which aggregate a return of that investment eight times over." From the amount of dividends referred to this contention of petitioner seems to date the incumbency of the present executives from the year 1901. The evidence shows that for some ten or twelve years after that date the founder of the business, Samuel R. Heywood, was alive and to some extent, at least, in charge. Respondent also suggests that the 56 percent dividend paid stockholders in 1926 on the capital stock ($100,000) of petitioner is no more than a 5½ percent dividend on the petitioner's capital stock and surplus ($1,108,223.03) at that time in actual use in petitioner's business. From the stipulated facts it further appears that the combined compensation to petitioner's executives from 1901 to 1926 increased 41 times; that petitioner's capital and surplus increased 8⅓ times and the dividends paid increased 5⅗ times. If the executives' salaries had increased no faster than the amount of the dividends, the salaries for 1926 would have been just $23,240,

only slightly more than one half of the fixed salaries alone for the year (which are not contested by respondent). If the dividends had increased in amount as rapidly as the fixed salaries (not including extra compensation) the dividends for 1926, instead of amounting to $56,000, would have amounted to $110,000; and if as rapidly as the combined fixed salaries and extra compensation, the dividends for 1926 would have been not $56,000, but $410,000. If the dividends had kept pace with the increase of the combined capital and surplus they would have amounted in 1926 to $83,300. These figures and calculations are not intended as furnishing any rule for determining correct salaries which will meet the statutory requirements as to what are ordinary and necessary expenses in carrying on a business; they possibly point out how easily a well meaning board of directors can depart from equitable dealings with minority stockholders when their own interests are involved and their action is without restraint.

The statute does not allow "extravagant amounts paid by a corporation to its officers in the guise and form of compensation for their services" to be deducted from gross income as ordinary and necessary expenses of its business. This appears to be an apt designation of what has taken place in this case. Petitioner, at any rate, has failed to sustain the burden of proof showing that the amount for additional compensation to its officers disallowed by the Commissioner was in fact part of its ordinary and necessary expense of carrying on its business, and we so hold. *Botany Worsted Mills* v. *United States*, 278 U.S. 282.

*Judgment will be entered for the respondent.*