## UNITED STATES v. BANK OF NEW YORK & TRUST CO. *

## SAME v. PRESIDENT AND DIRECTORS OF MANHATTAN CO.

District Court, S. D. New York.
Nov. 28, 1934.

*Decree affirmed 77 F.(2d) 866, 881.

Martin Conboy, U. S. Atty., of New York City (Martin Conboy, Francis H. Horan, and Edward J. Ennis, all of New York City, and Paul A. Sweeney, of Washington, D. C., of counsel), for the United States.

Emmet, Marvin & Martin, of New York City (Frederick B. Campbell, Paul C. Whipp, and Lounsbury D. Bates, all of New York City, of counsel), for defendant Bank of New York & Trust Co.

Rumsey & Barker, of New York City (Wendell P. Barker, Robert J. Sykes, and W. C. Morris, all of New York City, of counsel), for defendant President and Directors of Manhattan Co.

Charles B. Alling, Hartwell Cabell, Coudert Bros., John M. Downes, Engelhard, Pollak, Pitcher, Stern & Clarke, Borris M. Komar, Rosenberg, Goldmark & Colin, and Samson Selig, all of New York City, representing various interests, filed briefs amici curiæ, in opposition to the motions of the government and in support of the motions of the defendants to dismiss.

COXE, District Judge.

In these suits the United States seeks to establish title to the remaining New York assets of Moscow Fire Insurance Company and Northern Insurance Company, two Russian insurance corporations which were dissolved in 1918 by decrees of the Soviet government. These companies formerly maintained branches in this country, and upwards of eight years ago the New York assets of both companies were taken over by the New York superintendent of insurance in liquidation proceedings under the New York statute.

The superintendent's liquidation was completed prior to 1933, and in that year the remaining assets of the Moscow Company were turned over, under a state court order, to the defendant Bank of New York & Trust Company "as agent or depositary" of the Moscow Company, subject to withdrawal only on the "order of a court of competent jurisdiction." The same disposition was made of the remaining assets of the Northern Company, except that the depositary in that case was the Bank of Manhattan Trust Company, predecessor of the defendant President and Directors of the Manhattan Company.

The Northern Company had previously made an assignment for the benefit of creditors to the defendant President and Directors of the Manhattan Company, under the New York statute, and, by a later order of the state court, the transfer of the assets of the Northern Company to that company, as assignee, was authorized and approved.

The funds of the two companies are now held by the defendant banks, awaiting distribution among the persons entitled to share in the funds, respectively.

Recently, proceedings were started in the state courts, on notice to all parties interested, to secure distribution of the two funds, and these proceedings have proceeded in the case of the Moscow Company to judgment, and, in the case of the Northern Company, to a consideration of the claims presented.

The complaints in the two suits are substantially alike, and allege that the funds of the two companies, now held by the defendant banks, were "confiscated and appropriated" by the "Russian State" in 1918, and that title to both funds was assigned to the United States by the "Russian State" on November 16, 1933. The prayer for relief in each case is for an accounting and a direction to turn over the fund to the United States.

The present motions are by the government in each case for an injunction pendente lite, restraining distribution of the fund; and by the defendant in each case for a dismissal of the complaint for insufficiency.

The principal contentions urged by the defendants in support of the motions to dismiss are (1) that our courts will not enforce the Soviet decrees of confiscation over property located here, and which has always been located here; and (2) that no title or interest in or to the funds of the two com-

panies now held by the defendant banks has been or could be assigned or transferred to the United States by the Soviet government.

The legislation of any nation has no extra-territorial force as a matter of right. Rose v. Himely, 4 Cranch, 241, 2 L. Ed. 608; The Apollon, 9 Wheat. 362, 6 L. Ed. 111; Hilton v. Guyot, 159 U. S. 113, 16 S. Ct. 139, 40 L. Ed. 95; Second Russian Ins. Co. v. Miller (C. C. A.) 297 F. 404, affirmed 268 U. S. 552, 45 S. Ct. 593, 69 L. Ed. 1088. The extent to which such legislation will be recognized by other nations depends on comity. Bank of Augusta v. Earle, 13 Pet. 519, 589, 10 L. Ed. 274; Second Russian Ins. Co. v. Miller, supra. Comity is "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U. S. 113, 164, 16 S. Ct. 139, 143, 40 L. Ed. 95.

The courts of this country will not, however, enforce the laws of foreign nations which are contrary to our own public policy [Bank of Augusta v. Earle, supra; Russian Reinsurance Co. v. Stoddard, 240 N. Y. 149, 147 N. E. 703; Vladikavkazsky R. Co. v. New York Trust Co., 263 N. Y. 369, 189 N. E. 456, 91 A. L. R. 1426]; and the public policy of the United States is to be determined "from the Constitution and the laws, and the course of administration and decision" [License Tax Cases, 5 Wall. 462, 469, 18 L. Ed. 497]; "not by the varying opinions of laymen, lawyers, or judges as to the demands of the interests of the public" [Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co. (C. C. A.) 70 F. 201, 202, 30 L. R. A. 193].

The confiscatory decrees of the Soviet government were clearly opposed to the public policy of the United States. Russian Volunteer Fleet v. U. S., 282 U. S. 481, 491, 492, 51 S. Ct. 229, 75 L. Ed. 473; Petrogradsky M. K. Bank v. National City Bank, 253 N. Y. 23, 170 N. E. 479; Vladikavkazsky R. Co. v. New York Trust Co., 263 N. Y. 369, 189 N. E. 456, 91 A. L. R. 1426; Baglin v. Cusenier Co., 221 U. S. 580, 31 S. Ct. 669, 55 L. Ed. 863. They were utterly ineffective to reach the properties of the Moscow and Northern Companies in this country [Vladikavkazsky R. Co. v. New York Trust Co., supra; Baglin v. Cusenier Co., supra; The Jupiter, 96 L. I. P. 62

(1927); Employees Liability v. Sedgwick, 1927, A. C. 95]; and the subsequent recognition of the Soviet government in no way changed the confiscatory nature of the decrees in so far as these particular funds were concerned [Lehigh Valley R. Co. v. State of Russia (C. C. A.) 21 F.(2d) 396, 401; Vladikavkazsky R. Co. v. New York Trust Co., supra].

It is insisted on behalf of the United States that the Soviet government became the "liquidator" of the assets of the two dissolved Russian insurance companies, and that a liquidator's title will be accorded recognition in our courts. The difficulty with this contention is that the complaints allege specifically that the properties of the two companies were "confiscated and appropriated" by the Soviet government. However, it is perfectly clear that the liquidation of a corporation implies winding up and distribution of the assets among the creditors and stockholders [Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 283, 107 N. E. 644; Matter of Silkman, 121 App. Div. 202, 105 N. Y. S. 872]; and it is nowhere suggested that the two funds in question were assigned to the United States for any such limited purpose as counsel intimates.

I am satisfied, also, that no assignment or transfer of the two funds was ever made to the United States by the Soviet government. The instrument relied on to support the alleged assignment is the letter of Mr. Litvinoff, People's Commissar for Foreign Affairs of the Union of Soviet Socialist Republics, to the President of the United States, dated Nov. 16, 1933, reading as follows:

"My dear Mr. President: Following our conversations I have the honor to inform you that the Government of the Union of Soviet Socialist Republics agrees that, preparatory to a final settlement of the claims and counter claims between the Governments of the Union of Soviet Socialist Republics and the United States of America and the claims of their nationals, the Government of the Union of Soviet Socialist Republics will not take any steps to enforce any decisions of courts or initiate any new litigations for the amounts admitted to be due or that may be found to be due it, as the successor of prior Governments of Russia, or otherwise, from American nationals, including corporations, companies, partnerships, or associations, and also the claim against the United States of the Russian Volunteer Fleet, now in litigation in the

United States Court of Claims, and will not object to such amounts being assigned and does hereby release and assign all such amounts to the Government of the United States, the Government of the Union of Soviet Socialist Republics to be duly notified in each case of any amount realized by the Government of the United States from such release and assignment.

"The Government of the Union of Soviet Socialist Republics further agrees, preparatory to the settlement referred to above not to make any claim with respect to:

"(a) Judgments rendered or that may be rendered by American courts in so far as they relate to property, or rights, or interests therein, in which the Union of Soviet Socialist Republics or its nationals may have had or may claim to have an interest; or,

"(b) Acts done or settlements made by or with the Government of the United States, or public officials in the United States, or its nationals relating to property, credits, or obligations of any Government of Russia or nationals thereof.

"I am, my dear Mr. President,
"Very sincerely yours,
"Maxim Litvinoff,
"People's Commissar for Foreign Affairs, Union of Soviet Socialist Republics."
"Mr. Franklin D. Roosevelt,
"President of the United States of America,
"The White House."

Under the express terms of this letter, the assignment to the United States was of "the amounts admitted to be due or that may be found due it, (i. e., the Soviet Government) as the successor of prior governments of Russia, or otherwise, from American nationals, including corporations, companies, partnerships, or associations. * * *"

The funds held by the defendant banks for the Moscow and Northern Companies were in no sense due the Soviet government from "American nationals." They belonged to the two dissolved insurance companies, which were given juristic standing in the New York courts by repeated decisions of the Court of Appeals. Petrogradsky M. K. Bank v. National City Bank, 253 N. Y. 23, 170 N. E. 479; People, by Beha, v. Russian Reinsurance Co., 255 N. Y. 415, 175 N. E. 114; In re Northern Ins. Co. of Moscow, 255 N. Y. 433, 175 N. E. 120. Moreover, the defendant banks were merely custodians of the respective funds, pursuant to orders of the state courts; and now the defendant

Bank of New York & Trust Company holds the fund of the Moscow Company only "as agent or depositary" of that company; and in the case of the Northern Company, the defendant President and Directors of the Manhattan Company is acting as assignee for the benefit of creditors under the New York statute. With respect to neither fund is there any relation of debtor and creditor in so far as the defendant banks are concerned. The letter plainly refers to such funds as were involved in State of Russia v. National City Bank (C. C. A.) 69 F.(2d) 44, where an American bank was the debtor of the Russian government for the latter's funds held on deposit; it has no application whatever to the present funds now in the hands of the defendant banks merely as custodians. This is particularly emphasized by the inclusion in the letter of the claim of the Russian Volunteer Fleet, which was before the Supreme Court in Russian Volunteer Fleet v. U. S., 282 U. S. 481, 51 S. Ct. 229, 75 L. Ed. 473; for if it had been intended to transfer to the United States claims against dissolved Russian insurance companies for the recovery of New York assets, concerning which there had at the time been extensive litigation in the New York courts, it is at least reasonable to suppose that specific reference would have been made to them.

■ The suggestion of the government that the Litvinoff assignment is not open to judicial construction requires little comment, for clearly where private rights are concerned, the mere assertion of the government that suit should be commenced does not preclude the courts from determining as a judicial matter the true meaning of the instrument involved. There is nothing in State of Russia v. National City Bank (C. C. A.) 69 F.(2d) 44, holding to the contrary; and the statement on page 48 of the opinion that "our courts must accept the assertion of the government of the United States as to the effect of an assignment," when applied to the particular facts of that case, means nothing more than that the authority of Mr. Litvinoff to make the assignment, and the right of the United States to accept it, will not be questioned by our courts. The word "effect" as used in this excerpt from the opinion was not intended to preclude judicial interpretation of the language of the instrument itself.

I hold, therefore, that the two funds in the hands of the defendant banks were not in any way affected by the Soviet decrees of

confiscation, and that the United States has not acquired title to either fund; and with this disposition of the principal issues in the two cases, it seems unnecessary to consider the other points raised by counsel.

The motion of the defendant in each case to dismiss the complaint for insufficiency is granted; and the motions of the United States for injunctions pendente lite are denied.