ARPAD PLESCH et al., Appellants, *v.* BANQUE NATIONALE DE. LA REPUBLIQUE D'HAITI, Respondent

First Department, February 2, 1948.

*Albert R. Connélly* of counsel (*Carlyle E. Maw, Vernes Graf-strom* and *Henry W. Trimble, Jr.*, with him on the brief; *Cravath, Swaine & Moore*, attorneys), for appellants.

*Adolf A. Berle, Jr.,* of counsel (*Thorold J. Deyrup* and *Robert H. Seabolt* with him on the brief; *Berle, Berle, Agee & Land,* attorneys), for respondent, appearing specially.

VAN VOORHIS, J. The order appealed from vacates a warrant of attachment on the ground that the cause of action did not arise within the State of New York, which is essential to the jurisdiction of the court inasmuch as the parties are nonresidents (General Corporation Law, § 225). The decisive question on this appeal relates to whether there was a conversion by defendant of plaintiffs' securities at New York City, so that the cause of action can be held to have arisen in this State.

Plaintiffs Arpad Plesch and Leonie Plesch are stateless persons residing in Switzerland who are at present in the United States on visitors' visas. Arpad Plesch was born in Hungary, and for that reason was placed on the United States Proclaimed List of Certain Blocked Nationals (issued pursuant to Presidential Proclamation No. 2497, dated July 17, 1941; Code of Fed. Reg., Cum. Supp., tit. 3, p. 241), and the comparable lists of various other countries, but his name was removed from the British list during 1945. The American list has been withdrawn. (11 Federal Register 7567.) He is entitled to own and does own property in the United States, as well as in England and Canada, which has been unblocked. There is nothing in the record to indicate that he rendered aid or comfort to enemies of the United States in time of war, nor did his having been included in the Proclaimed List in the United States give him the status of an enemy alien.

Defendant was organized under the laws of Haiti to engage in business as a commercial bank, and did business as such with plaintiffs in 1940 and 1941. All of the stock of defendant was later acquired by the Haitian Government. Defendant has become largely an instrumentality of the Republic of Haiti. Nevertheless, before the courts of New York, it retains its status as a commercial bank in its relations with plaintiffs.

The action is brought to recover damages for the alleged conversion by the défendant of securities in New York City which had been deposited with it by plaintiffs for safekeeping.

Special Term vacated the warrant of attachment upon the ground that prior to the alleged conversion, the property of the plaintiffs was sequestered and title vested in the Republic of Haiti by governmental fiat. In the opinion at Special Term it is stated: " Under the circumstances, the conversion, if any, occurred in Haiti, not by the defendant, but by the government

of Haiti. For, as the defendant at all times acted under governmental orders, the conduct of the defendant, with respect to the securities does not amount to conversion (see 65 C. J., 67, sec. 109; 48 C. J. S., 27, sec. 18). The grievance of the plaintiffs is not against the defendant but against the Republic of Haiti.''

That would be true only if the defendant acted on behalf of a government within the scope of valid governmental directives.

The effect and validity in New York State of the confiscatory decrees cannot properly be decided in defendant's favor on a motion to vacate the attachment on these affidavits. These decrees purport to go beyond what this country or our other allies in the war did in relation to the properties of these plaintiffs. There is nothing in this record to show the reasons for the action of the Republic of Haiti, nor to show what it did except to expropriate, by name, the private properties of plaintiff Arpad Plesch and of the corporate plaintiff, unconditionally, without opportunity to them to be heard, and without compensation. The property of Leonie Plesch was not nationalized. These confiscatory decrees directed against these plaintiffs *nominatim* recite what purports to have been a general decree of February 25, 1944, on the nationalization of personal property and real estate '' belonging to enemies, allies or agents of enemies '', but plaintiffs assert that they are not embraced in these categories, and this general decree is not set forth in the record, so that it is not now before the court whether the properties of the said plaintiffs were nationalized in accordance with a general plan respecting the properties of all persons supposed to have been similarly situated. It is not before the court whether the owners' property rights were intended to be suspended for a limited time, as for the duration of World War II (they purport to have been expropriated in perpetuity), nor does it appear what was the special exigency which dictated this summary action by a foreign government so much more drastic in its nature than that which was taken by the United States. There is nothing in this record to show that Arpad Plesch or the corporate plaintiff was engaged in promoting the advantage of the enemy or that they were enemy aliens, or that they had been guilty of any other offenses against the Haitian government or its peace and tranquility justifying confiscation under the Law of Nations. No procedure purports to have been provided to enable plaintiffs to vindicate their title or right to possession of their properties, by establishing that they were not enemies, nor allies nor agents of enemies. Other matters bearing on whether recognition should be accorded to these decrees await development by evidence at the trial.

Therefore, at least in advance of evidence of facts and circumstances surrounding the making of these decrees showing them to comport with our public policy, with which on their face they are so incongruous, it cannot be assumed that they are valid for the purposes of this motion. (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *United States* v. *Bank of New York & Trust Co.*, 10 F. Supp. 269, 271, affd. 77 F. 2d 866, affd. 296 U. S. 463.) The defendant must be regarded as having failed to have sustained the burden of upholding their validity (*Virginia Coupon Cases*, 114 U. S. 269, 288; *Petrogradsky M. K. Bank* v. *National City Bank, supra*), and the attachment must stand or fall on the basis that there was no legal expropriation.

It is well settled that one cannot successfully assert as a defense to an action for wrongfully dealing with property that he acted pursuant to governmental orders, if such orders were invalid or ineffective. (*Little* v. *Barreme*, 2 Cranch [U. S.] 170 [per MARSHALL, Ch. J.]; *Cunningham* v. *Macon & Brunswick R. R. Co.*, 109 U. S. 446, 452; *Sloan Shipyards Corp.* v. *United States Shipping Board Emergency Fleet Corp.*, 258 U. S. 549, 567; *Patchogue Land Corp.* v. *Long Island State Park Comm.*, 243 N. Y. 15; *Sanders* v. *Saxton*, 182 N. Y. 477; *United States* v. *Lee*, 106 U. S. 196; *Bates* v. *Clark*, 95 U. S. 204; *Scott* v. *Donald*, 165 U. S. 58, 67–70; *Virginia Coupon Cases*, 114 U. S. 269, 288–293, *supra; United States* v. *Deutsches Kalisyndikat Gesellschaft*, 31 F. 2d 199, 202; *Land* v. *Dollar*, 330 U. S. 731.)

That reduces the present issue to the question whether the affidavits show that, irrespective of the Haitian nationalization decrees, plaintiffs have evidence to establish that a conversion of these securities by defendant occurred in New York City. The question does not concern whether there was a conversion in Haiti by defendant's refusal to deliver up the securities upon demand, after they had been transported there, but whether their removal from New York City to Haiti, under the orders of the defendant, was in itself a conversion. Some of them were sold in New York City against plaintiffs' instructions.

Facts stated in the affidavits submitted on the motion to vacate the warrant of attachment may be considered in determining whether the warrant of attachment should be sustained (Civ. Prac. Act, §§ 949, 950).

Plaintiffs contend that their instructions to defendant governing the deposit of these securities required that they be kept

in New York City, and that none were to be sold or otherwise disposed of except on specific subsequent instructions. As evidence that this was part of the agreement, plaintiff Arpad Plesch has made affidavit that in opening the depositary account on May 10, 1940, he instructed defendant to " Please leave the securities on deposit in the place where they at present are found, and do not cause them to go to Port-au-Prince ", which was acknowledged by a communication, dated June 18, 1940, in which defendant stated: " We observe from the postscript of your letter that you wish the above bonds to remain in safe keeping in the banks which now hold them and we shall be pleased to comply with your instructions." The last mentioned date was the same as that on which the first deliveries of securities took place to defendant on behalf of Arpad Plesch. His affidavit avers that at all times thereafter such instructions were standing instructions with which the defendant was to comply, unless specifically directed otherwise. In support of this conclusion he states that defendant " in a cable to me dated July · 3, 1940, stated its intention (upon which I thereafter relied), not to dispose of or permit the disposal of securities transferred to its name except upon my explicit written instructions or authenticated cable." This was certainly an instruction not to sell or transfer title to any securities, and with the other instructions, in connection with the other facts in the case, may reasonably be contended to have amounted to a continuing direction not to transmit any of the securities in the account from New York to Haiti.

It is clear that the defendant knew that shipment to Port-au-Price, Haiti, meant bringing these securities directly into the power and possession of the Republic of Haiti, which, in view of the existing decrees of confiscation, meant turning them over to it lock, stock and barrel. By doing so, the defendant is charged with having deliberately subjected them to confiscation, in derogation of the rights of plaintiffs.

It should be borne in mind that *for the purposes of this motion* the purported nationalization of this private property by Haiti does not protect defendant, which owed to plaintiffs the duties of a commercial bank with which their securities had been deposited for safekeeping. Defendant did not act *vis a vis* the plaintiffs as fiscal agent of the Republic of Haiti. The circumstance that it also exercised the latter function does not limit or condition its liability to plaintiffs as a bank, and could not justify its taking plaintiffs' securities and delivering them up for confiscation to the Haitian government, even if the

·agreement of deposit had not expressly provided, as plaintiff Arpad Plesch avers that it did, that the securities were to be kept in New York City and were not to be transported to Haiti.

Assuming *arguendo* that defendant, as depository under the terms of the agreement, could have held these securities in Haiti for the account of plaintiffs as well as in New York, this could not have justified the defendant in removing them· from New York to Haiti if that meant *ipso facto* ceasing to hold them for the account of plaintiffs and delivering them up to a third party, even a government. Defendant itself recognized that this was not a question of whether it was to act as custodian for plaintiffs in the one place or the other, but that transmittal to Haiti meant giving effect to a transfer of title out of the plaintiffs. On December 6, 1945, for example, defendant wrote to the National City Bank of New York stating: "At the request of the owners, the Government of Haiti, we ask you to air-mail to us insured the following securities which you hold for our account." Previously defendant had directed the National City Bank to place various of these securities in its account on behalf of the government of Haiti, and as early as November 24, 1944, it had written that United States Treasury licenses were being obtained by the Haitian Embassy and that the Haitian Ambassador would give definite instructions relative to the sale of certain of said securities. Thereafter, such licenses were issued authorizing sales in large quantities and licensing the National City Bank to "credit the proceeds thereof to the account of" defendant "on behalf of the Government of Haiti." Only $9,000 of bonds (St. Louis & Southwestern Ry. Co.) were sold, apparently for the reason that it was deemed dangerous to sell the rest. Forwarding them to Port-au-Prince served the same purpose. Defendant explicitly asserted that the assets of the corporate plaintiff had been nationalized and that consequently only the Government of Haiti was empowered to act in its behalf. The same information was given, in effect, with respect to plaintiff Arpad Plesch.

Confiscation in ostensible compliance with foreign edicts which are void in this State, has sometimes been compared, in its legal effect, to action by thieves or marauders (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23, 29–30, *supra*). Even if a bailee be not restricted by the terms of a bailment to keep the goods at any particular place, it would amount to a conversion for him to remove them from a known place of safety and to put them deliberately into the way of persons lying

in wait to seize them, *a fortiori* if the bailee is also fiscal agent for the plunderers. "That the confiscation decree in question, clearly contrary to our public policy, was enacted by a government recognized by us, affords no controlling reason why it should be enforced in our courts (*Beglin* v. *Cusenier*, 221 U. S. 580.) " (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369, 378–379, *supra; James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248, 257, *supra.*)

The circumstance that the parties to the action are all non-residents does not defeat the right to institute this action in our courts, inasmuch as the Legislature by section 225 of the General Corporation Law has declared it to be the public policy of this State to entertain jurisdiction if the cause of action arose here, which the record indicates that it did, through the conversion of all or of a substantial amount of plaintiffs' securities in New York City.

In order to sustain the attachment, it is not necessary that plaintiffs shall present evidence of conversion of each stock and bond enumerated in the schedule annexed to the complaint; if the warrant is excessive, it can be reduced, or the amount of the undertaking increased. It ought not to be vacated. It is enough that the affidavits show the existence of facts on the basis of which there is a substantial prospect of success at the trial. Where that has been done, "the court should not attempt to decide in advance the merits of the controversy by vacating the attachment unless the complaint and affidavits clearly indicate that the plaintiff must ultimately fail." (*Bard-Parker Co., Inc.*, v. *Dictograph Products Co., Inc.*, 258 App. Div. 638, 640.)

It appears that on January 11, 1946, 18,542⅓ shares of Haitian Corporation common stock (items 17 and 18 on Schedule I annexed to the complaint) and $9,000 French National Mail Steamship Lines Bonds (item 16) were sent on defendant's instructions by National City Bank from New York to defendant at Port-au-Prince, Haiti, and that an additional 2,200 shares of Haitian Corporation common stock (items 9 and 10) were thus transmitted on April 1, 1946. There is evidence that the highest value quoted for such shares between the earlier date and the issuance of the attachment was 29½ bid and 31 asked. That would tend to support a valuation for the securities thus transmitted to Haiti in excess of $600,000. In addition it appears, as has been previously alluded to, that on August 29, 1945, $8,000 principal amount of St. Louis Southwestern bonds were sold in New York City and an additional $1,000 on August

31, 1945, and that the balance of $242,000 principal amount of such bonds were receipted for by defendant on November 19, 1945, which were sent to defendant at Haiti by National City Bank in response to defendant's cable: "At request of Government of Haiti please air mail us unsold balance and coupons St. Louis Southwestern Ry. Co. in your possession for our account." These bonds were declared payable on July 24, 1947, and the debtor corporation provided the Guaranty Trust Company with the necessary funds for their redemption together with accrued interest thereon. The interest alone on these particular bonds of plaintiffs is stated to have aggregated $138,-050. The plaintiffs are entitled to the benefit of a determination for the purposes of this motion that the shipment of these bonds to Haiti constituted a conversion of them by defendant, as well as the sale of $9,000 in New York City contrary to plaintiffs' express instructions, and to a determination that even if it were otherwise, the presentation of them at New York and the collection of the proceeds of redemption from the Guaranty Trust Company by defendant for the account of the Republic of Haiti constituted a conversion.

It is immaterial to the decision of this motion that these securities were shipped to Haiti by order of the Republic of Haiti; defendant had previously notified National City Bank to comply with such instructions as might be given by the Haitian Government, and defendant remains responsible if it is not protected by the decrees of nationalization. This, as has been pointed out, cannot be determined upon this motion in defendant's favor.

Without attempting to pass upon the sufficiency of plaintiffs' other contentions, the attachment should be upheld on account of the conversion by the defendant in New York State of the securities hereinbefore enumerated.

The order, so far as appealed from, vacating the warrant of attachment, should be reversed, with $20 costs and disbursements and defendant's motion denied.

Peck, P. J., Glennon and Cohn, JJ., concur; Shientag, J., dissents and votes to affirm.

Order, so far as appealed from, reversed, with $20 costs and disbursements to the appellants and the motion denied. Settle order on notice. [See *post*, p. 878.]