In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, Superintendent of Insurance of the State of New York, Appellant, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the SECOND RUSSIAN INSURANCE COMPANY, Appellant, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.

ALIEN PROPERTY CUSTODIAN, Respondent.

First Department, January 9, 1931.

*James F. Donnelly* of counsel [*Alfred C. Bennett* and *John M. Downes* with him on the brief; *Clarence C. Fowler*, attorney], for the appellant Superintendent of Insurance.

*Robert J. Sykes* of counsel [*Albert Bonynge* with him on the brief; *Bonynge & Barker*, attorneys], for the appellant Second Russian Insurance Company.

*Nathan Ottinger* of counsel [*Charles J. Schuck*, attorney], for the respondent.

FINCH, J. The Alien Property Custodian, during the war, having demanded of the Second Russian Insurance Company payments due and to become due in the future under a foreign contract with an enemy alien, and the Second Russian Insurance Company having subsequently gone into liquidation, the question here presented is whether the aforesaid claim, brought by the Alien Property Custodian, may be allowed a preference over all other claims.

The Superintendent of Insurance, as liquidator, disallowed this claim. The Alien Property Custodian filed objections. Sent to a referee to hear and report, the preference was disallowed. At Special Term the motion of the Superintendent to confirm the report was denied, the objections on behalf of the Alien Property Custodian

were sustained, the claim allowed as a Class I claim with interest, and directed to be paid in preference to all other claims.

The facts are not in dispute and briefly are as follows: A German partnership known as H. Mutzenbecher, Jr., made a contract with the Second Russian Insurance Company, dated at St. Petersburg, July 24, 1913, whereby the Mutzenbecher firm was to be the general agent for all the business of the Second Russian Insurance Company outside of Russia, said firm to bear all expenses, to receive a commission of three and one-half per cent upon business obtained by it, and in addition to participate in the profits. The Mutzenbecher firm thereafter caused to be organized a corporation known as Meinel & Wemple, to act as agents for procuring business for the Second Russian Insurance Company and to manage a branch office of that company in this State. In 1916 the Russian government prohibited commercial relations between Russian citizens and citizens of enemy alien countries, in which class Germany was included. The Second Russian Insurance Company then purported to enter into a direct agency contract with Meinel & Wemple. This contract subsequently was held to be colorable merely and that the original contract between the Second Russian Insurance Company and Mutzenbecher continued in force. (*Second Russian Ins. Co. v. Miller*, 268 U. S. 557.) After the entry of the United States into the World War, the Alien Property Custodian, in 1918, demanded of the New York trustees of the Second Russian Insurance Company the sum of $15,801.31, representing commissions then due to the Mutzenbecher firm, which commissions, as they accrued, had been placed by Meinel & Wemple in a so-called suspense account for the benefit of Mutzenbecher. The amount demanded was paid over and an action brought pursuant to section 9 of the Trading with the Enemy Act (40 U. S. Stat. at Large, 419, as since amd.) to recover it. In that action it was held that the property was that of an alien enemy and that the Alien Property Custodian was lawfully entitled thereto. On or about June 26, 1919, a second demand was made by the Alien Property Custodian upon Meinel & Wemple for all commissions due Mutzenbecher under the aforesaid contract and to become due in the future. At the time of this latter demand there was on deposit in the said suspense account the sum of $13,032.43. At this time also there was pending an appeal from the judgment denying the right in the action brought to recover the amount paid over upon the former demand. It was accordingly stipulated that the sum of $13,032.43 would be returned to the Second Russian Insurance Company and that if the latter were unsuccessful in the action brought to recover the fund which had been seized, this amount

would be returned to the Alien Property Custodian. Subsequently the Second Russian Insurance Company went into liquidation and, on behalf of the Alien Property Custodian, a claim was filed for the said sum of $13,032.43, which claim, at the hearing, was amended so as to include all additional commissions accruing under the contract subsequent to the second demand of the Alien Property Custodian.

From the foregoing it appears that the claim in question is composed of two distinct parts: *First*, of the aforesaid sum of $13,032.43, which existed at the time of the demand; and *second*, the amount subsequently deposited in the fund representing commissions accruing after the demand. At the outset, therefore, the question is presented whether the Custodian is not entitled to the sum of $13,032.43, pursuant to the stipulation and the authority of *Second Russian Insurance Company* v. *Miller* (268 U. S. 552), in which possession of the amount involved in the first demand was confirmed in the Alien Property Custodian, and also the commissions subsequently accruing in the event they are covered by the aforesaid demand.

As to the first item, the right of the Alien Property Custodian to receive this amount forthwith is established by the decision made in the case of *Second Russian Insurance Company* v. *Miller (supra)*, which involved a prior demand for accumulated commissions under the same contract. The second demand, in so far as the sum of $13,032.43 is concerned, presented the identical question determined in the case cited, namely, the absolute right of the Custodian to possession or control of the property demanded. The Custodian is also entitled to this amount pursuant to the stipulation of the parties based upon the outcome of the appeal in *Second Russian Insurance Company* v. *Miller (supra)*.

As to the balance of the claim, representing commissions not yet earned under the contract at the time of the demand, but which subsequently were earned and deposited in the suspense account pending a determination of the appeal in the suit arising out of the first demand, a somewhat different question is presented. It would seem, however, that as to this portion of the claim, also, under the facts, the Custodian is entitled to succeed.

The demand of the Custodian was broad enough to cover all the interest of the alien enemy in the contract in question, and to require the delivery of all commissions presently payable thereunder, and to acquire the right to the delivery of such as might from time to time be received in the future. Authority in the Custodian to make such a demand is found in subdivision 2 of the executive order of the President of February 26, 1918, quoted in full in the case of *Matter*

*of Miller* (281 Fed. 764), which case also is authority for the proposition that every right in the property involved, whether tangible or intangible, passed under the demand to the Alien Property Custodian.

Under the facts in the case at bar it was not necessary, nor would it have been seemly, in view of the pending appeal with reference to the first demand, for the Custodian to have made a separate demand covering each commission arising under the contract. The fact is that these commissions to accrue out of the contract seized were contemplated by all the parties to be included within the demand, and when they were received and deposited in the same fund and account as was the amount already received when the demand was made, the right of the Custodian attached to such moneys subsequently received as absolutely as it did to the moneys existing at the time of the demand. (*Matter of Miller*, 281 Fed. 764; *Garvan* v. *Marconi Wireless Telegraph Co.*, 275 id. 486, 488.) The cases of *Miller* v. *Rouse* (276 Fed. 715) and *Kahn* v. *Garvan* (263 id. 909), relied upon by the appellants, contain no holding to the contrary. They merely state the rule that in the case of seizure of a chose in action as distinguished from tangible property, the Custodian is entitled only to the right in such property actually possessed by the alien enemy. When, however, such property right has been defined, the Custodian becomes entitled to the possession thereof, and any claims or equities of any description in respect of said property can be enforced only in an equitable action brought by the person from whose possession the fund has been taken by the Alien Property Custodian, as provided by section 9 of the Trading with the Enemy Act. (*Central Trust Co.* v. *Garvan*, 254 U. S. 554.)

The right of the Alien Property Custodian to receive the property in question is in no way affected by the declaration of peace, the congressional resolution declaring the state of war between the United States and Germany at an end (approved by the President July 2, 1921; 42 U. S. Stat. at Large, 105, chap. 40) having expressly excepted property of German nationals which had been the subject of a demand by the Alien Property Custodian. (*Matter of Miller, supra.* See, also, Treaty of Peace with Germany, 42 U. S. Stat. at Large, 1939.)

The contention of the appellants that the Alien Property Custodian is not properly before the court in this proceeding because of his appearance by a private attorney, instead of by the United States Attorney, is not well taken. Appellants base this contention upon a Federal statute (U. S. R. S. § 771; U. S. Code, tit. 28, § 485) providing: " It shall be the duty of every district attorney to prosecute, in his district, all delinquents for crimes and offenses

cognizable under the authority of the United States, and all civil actions in which the United States are concerned."

The proceeding in the case at bar is not a prosecution by the Custodian or by the United States, but a liquidation proceeding started by the liquidator, in which it is recited in the order that the Alien Property Custodian appeared in person and filed a claim. It likewise appears that objections and exceptions in writing were personally filed by the Alien Property Custodian of the United States to the disallowance of this claim. Undoubtedly the Custodian had a right to appear in person. He had a like right to make the demand and receive payment pursuant thereto. The proof of claim of the Custodian was filed through his auditor, and not by an attorney, as was also the objection to the disallowance of the claim by the liquidator. The case of *Sutherland* v. *International Ins. Co. of N. Y.* (43 F. [2d] 969), relied upon by appellant, was, on the contrary, a prosecution in the United States court. In any event, section 771 of the United States Revised Statutes has no application other than to define his duties in the Federal courts. " In general, suits in State courts, although the United States may be directly interested therein, do not fall within the official duty of a district attorney to attend to." (16 Opinions of Attorney-General [1878], 99, at p. 100.) In addition, since it appears that the Alien Property Custodian has appeared in person herein, the question is merely one of practice and not one of jurisdiction. The objection in consequence becomes immaterial, since at the most, if the Alien Property Custodian is entitled to this fund, he would be afforded an opportunity to assert his right in a proper manner. Not having, however, raised this objection heretofore, since it is one of procedure and not of jurisdiction, it must be deemed waived.

We now come to the question of what interest, if any, should be allowed upon this claim. Since the Superintendent was compelled to hold these moneys as liquidator on behalf of those entitled thereto, the case falls within the principle that only such interest must be paid by him as he has received. But this amount he must pay, since the other creditors should not profit by the withholding of moneys from those who have a right thereto. *(Matter of Bergen,* 237 N. Y. 452, at p. 459.)

Looking now at the matter from the point of view of broad equities, we find that the results reached accord therewith. In the first place, this is a claim to an entire fund in which the United States has a substantial interest, at least to an amount of twenty per cent. Since the interest of the United States directly in this claim cannot here be separated from the claim itself, it follows that

the United States is entitled to receive this money. Furthermore, under the provisions of the Trading with the Enemy Act there is no doubt as to the right of the. Alien Property Custodian to these funds if the war had continued. Such right of the Alien Property Custodian has been expressly reserved to him. In consequence nothing has been shown to interfere with his right to these moneys and all claims against the fund must be determined in accordance with section 9 of the Trading with the Enemy Act. Furthermore, this whole fund in the hands of the liquidator has been created through the efforts of the Mutzenbecher firm, whose interest has been taken by the Alien Property Custodian. The claim comprises only some three per cent for services in creating the fund.

The order appealed from should, therefore, be modified by deducting the amount allowed by way of interest in excess of that received by the Superintendent of Insurance and, as so modified, affirmed, without costs.

McAvoy and Sherman, JJ., concur; Dowling, P. J., and Merrell, J., dissent.

Sherman, J. (concurring). I concur in the opinion of Mr. Justice Finch. The notice served by the Alien Property Custodian on or about June 26, 1919, must be regarded as constituting the seizure of all sums then or thereafter due to Mutzenbecher for commissions. The Federal government, under the power given by the Trading with the Enemy Act, captured those sums just as effectively as though they had been found in the possession of Mutzenbecher and taken from him. Under this war measure, its title became paramount without the aid of any judicial determination (*Stoehr* v. *Wallace*, 255 U. S. 239), and cannot be questioned except by way of the procedure stated in that act. Therefore, before the Superintendent of Insurance, as liquidator, undertook to deal with the funds of the insurance company, the rights of the Alien Property Custodian to the fruits of Mutzenbecher's contract had become fixed. These funds were then government property. Had the war lasted, these moneys, like any other property of the government, might have been employed in the conduct of the war. The Federal government alone has dominion over them.

It is of no moment that Congress, since the Treaty of Peace with Germany (42 U. S. Stat. at Large, 1939), has enacted that only twenty per cent thereof is to be held by the United States government. (See Settlement of War Claims Act of 1928 [45 U. S. Stat. at Large, 272], § 14, amdg. Trading with the Enemy Act, § 9, as amd.) The Alien Property Custodian, having made the seizure, was chargeable with the amount so captured and has properly

entered this peace-time proceeding so that the property could not be disposed of in violation of his rights.

The Trading with the Enemy Act has not been repealed nor did it cease to be operative upon the cessation of the war. (*Commercial Trust Co.* v. *Miller,* 262 U. S. 51.) On the contrary, it stands as legislation dealing with enemy property and conferring powers which can be exercised forthwith if the United States shall become involved in any future war. No judicial decision should be made which can be viewed as a limitation upon the sweeping and summary powers conferred by that enactment.

DOWLING, P. J., and MERRELL, J., dissent.

Order modified by deducting the amount allowed by way of interest in excess of that received by the Superintendent of Insurance, and as so modified affirmed, without costs. Settle order on notice.