**UNITED STATES of America**

v.

**Melvyn R. GLOVER.**

**Crim. No. 73–0677–K.**

United States District Court,
D. Maryland.

May 23, 1974.

George Beall, U. S. Atty., James M. Kramon, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Alan M. Perlman, Silver Spring, Md., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

On August 7, 1973, the defendant, the driver of a truck who was in the course of delivering produce, including potatoes, limes and the like, to the commissary at Andrews Air Force Base, was observed to take from containers of such produce after certain items of that produce were unloaded from the truck and to place in a bag bearing the name upon it of the commissary some of those certain items, and then to secrete such bag on the truck. On November 6, 1973, the defendant represented by counsel, was tried before United States Magistrate George E. Burgess [1] upon the defendant's plea of not guilty. The Government was represented by a sergeant in the United States Air Force who was not an attorney. After trial, during which the Magistrate heard testimony from two witnesses called by the Government and three witnesses called by the defendant, including the defendant himself; another truck driver who had many times delivered commissary items to Andrews Air Force Base; and a character witness, the Magistrate found the defendant guilty beyond a reasonable doubt of stealing and converting to his own use the produce in question in violation of 18 U.S.C. § 641. The Magistrate originally imposed a sentence of one year, suspended imposition of service of sentence, placed the defendant on probation for a period of one year and required as one of the conditions of such probation payment by the defendant of a fine of $250.00. Additionally, the Magistrate required that the defendant cease visiting Andrews Air Force Base. Subsequently, after the defendant moved to reduce the sentence, the Magistrate reduced the probation period from one year to six months and the fine from $250.00 to $150.00. The record reveals that the defendant has paid the $150.00 fine.

In this proceeding, the defendant appeals pursuant to Rule 8 of the Magistrates Rules. This Court has received

---

1. The defendant signed a form entitled "Consent To Be Tried by United States Magistrate", in which he waived his right to elect to be tried in the United States District Court having jurisdiction. *See* Federal Rules of Procedure for the Trial of Minor Offenses before United States Magistrates Rules 2 & 3 (1971) (hereinafter called Magistrates Rules).

memoranda from counsel, heard oral argument from them, and has listened to the recording of the proceedings before Magistrate Burgess and has considered all of the same. In connection with such consideration, this Court is bound by the provisions of Rule 8(d) of the aforementioned *Rules* in accordance with which the defendant is not entitled to a *de novo* trial in this Court and pursuant to which "[t]he scope of appeal shall be the same as on an appeal from a judgment of a district court to a court of appeals."

The applicable standard for such review is, with regard to the sufficiency of the evidence, that the verdict of guilty entered by the Magistrate "must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt." United States v. Sherman, 421 F.2d 198, 199 (4th Cir. 1970).

The defendant, upon appeal, contends, *inter alia*, that the charges upon which he was tried are defective because they allege only that the offense occurred "on or about" August 7, 1973 rather than on a specific date;[2] that

they do not allege specifically that the defendant performed any act with any intent, felonious or otherwise; that they do not set forth the value of the produce allegedly stolen by the defendant; and that they do not specifically charge that the property taken was property owned by the United States Government.[3] The said contentions of the appellant to the extent they challenge the sufficiency of the complaint are without merit. 18 U. S.C. § 641 does not include within its provisions any specific reference to intent. Nor does that statute require any proof of value of the items involved in order to establish a violation thereof; rather it establishes that the penalty which may be imposed in the event of conviction may not exceed a fine of $10,000, or confinement in excess of ten years, or both, except that if the value of the items does not exceed $100, the fine may not exceed $1000 and the confinement may not exceed one year. Both the original and the reduced sentences imposed by Magistrate Burgess in this case comport with the statutory provisions with regard to the taking or

---

2. That contention is without merit.

3. The complaint charges that Glover "did steal and convert to his own use certain produce which was being delivered by him, aboard a Chesappeak Motor Line truck to the AFB Comissary. Produce consisting of two five lb. bags of potatoes, limes, tomatoes, plums etc."; and also states that "this complaint is based on observations of employees of the comissary who saw GLOVER remove potatoes and limes from boxes being unloaded from the truck operated by GLOVER, who placed them and other itesm in a paper bag obtained from the commisary. The bag was observe being place in the truck by complainant. GLOVER when questioned about his actions turned bag over to complainant which contained potatoes, limes plumbs and tomatoes. GLOVER admitted taing items to complainant." (Literally transcribed.) Further, the complaint recites that it is brought under 18 U.S.C. § 641, which provides in part that "[w]hoever * * * steals * * * any * * * thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency

thereof * * *" is guilty of a violation of that statute.

Accordingly, it is rather difficult for this Court to understand that the defendant was not put on notice that he was being charged with stealing property which was in the course of being delivered to the Government and which the Government alleged was "property" as that word is used in 18 U.S.C. § 641. Insofar as sufficiency of proof is concerned, it is also to be noted that the defendant, as discussed *infra* in the body of the opinion in this case, contends that there is insufficient evidence to establish that the property involved was property belonging to the Government. Without considering the possibility that the property in this case was property "being made under contract for the United States or any department or agency thereof", the evidence produced in this case permitted the Magistrate to find beyond a reasonable doubt that the property involved had in fact been unloaded at the commissary and delivered to the commissary before the theft took place. While the record is not entirely clear, it would appear that the Magistrate determined that the produce had been delivered to, and belonged to, the Government at the time the theft took place.

converting of property of the United States Government having a value of $100 or less.

■■ Insofar as sufficiency of proof is concerned, there was sufficient evidence produced by the Government to support the Magistrate's findings beyond a reasonable doubt that the defendant knowingly stole or converted to his own use the produce in question, with the specific intent so to do, and that the property in question was property which had been delivered to and was in the custody of employees or agents of the United States Government. The defendant contends in this Court, as he did before Magistrate Burgess, that there was not sufficient evidence to identify the specific property taken by the defendant as property which had been delivered to and belonged to the United States Government. However, the record reveals that there was adequate testimony to establish delivery to and possession by the Government.

The defendant also stresses, as a ground for reversal by this Court, that at no time did any United States Attorney participate in the proceedings before Magistrate Burgess, and that the same is a violation of the applicable provisions of statutes and rules which are hereinafter referred to in this opinion. It is to be noted that the defendant seemingly entered no objection during or at any time while the proceedings were pending before Magistrate Burgess to the Government being represented by the Air Force sergeant. However, in any event, for reasons hereinafter set forth, the contentions of the appellant with regard to the absence of a member of the Office of the United States Attorney for the District of Maryland in the proceedings before Magistrate Burgess may not prevail in this case.

In 18 U.S.C. § 3401 (1972) Congress conferred jurisdiction for the trial and sentencing of persons accused and convicted of "minor offenses" upon the Magistrates' Courts. *See* n. 1 *supra*. In section 3402, Congress delegated to the Supreme Court the duty of prescribing "rules of procedure and practice for the trial of cases before magistrates". The Supreme Court did so by promulgating the Magistrates Rules. Rule 1 thereof provides:

These rules govern the procedure and practice for the trial of minor offenses (including petty offenses) before United States magistrates under Title 18, U.S.C. § 3401, and for appeals in such cases to judges of the district courts. To the extent that pretrial and trial procedure and practice are not specifically covered by these rules, the Federal Rules of Criminal Procedure apply as to minor offenses other than petty offenses. All other proceedings in criminal matters, other than petty offenses, before United States magistrates are governed by the Federal Rules of Criminal Procedure.

Rule 2(d)(2) (Minor Offenses other than Petty Offenses) states:

*Procedure.* The trial shall be conducted as are trials of criminal cases in the district court by a district judge without a jury.

Rule 3(c)(1) (Petty Offenses) provides:

*Procedure.* The trial shall be conducted as are trials of petty offenses in the district court by a sintrict judge without a jury.

Although a reading of those three sections suggests a difference in procedure for the trial of "petty" offenses as opposed to "minor offenses other than petty offenses", it appears that there is no actual distinction.[4] In 8A Moore's Federal Practice § 3.05 App. 53–54, Professor Moore states:

Magistrates Rule 3(c) provides that "the trial shall be conducted as are trials of *petty offenses* in the district

---

4. 18 U.S.C. § 1(3) provides: "Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense."

court by a district judge without a jury." This provision seems to differ from the comparable rule in ordinary misdemeanor cases—2(d)(2)—which incorporates the procedures in "trials of *criminal cases* in the district court by a district judge without a jury." The distinction may be meaningless, however, since there is no indication that district court judges observe different rules in the trial of petty offenses than in the trial of other criminal cases. Indeed, the Criminal Rules do not seem to permit any differences in this respect. Thus the scope of the Magistrates Rules seems to be the same *for trial purposes* in ordinary misdemeanor and petty offense cases. This interpretation is supported by old Rule 2, Rules for Trial of Petty Offenses Before United States Commissioners, which is the same as magistrates Rule 2(d)(2). [Emphasis in original.]

██ Thus, to the extent that the procedure followed during his trial was not covered by the Magistrates Rules, Glover was entitled to the protection of the Federal Rules of Criminal Procedure applicable to non-jury criminal trials.[5] Furthermore, the language of Rule 2(d)(2) of the Magistrates Rules indicates that the trial should have been conducted in accordance with all of the rules of this Court.

██ An examination of both 18 U. S.C. § 3401 and § 3402 and the applicable Federal Rules of Criminal Procedure reveals no language requiring the presence of an Assistant United States Attorney at trial before a Magistrate. Although Rule 2 of the Rules of the United States District Court for the District of Maryland does require one to be a member of the Bar of some state or of the District of Columbia in order to be admitted to practice in this Court, the procedure followed by Magistrate Burgess, *i. e.,* allowing the sergeant to act, in effect, as a prosecutor, has long had

the tacit approval of all of the Judges of this Court. Further, the disputed procedure contravenes none of the guidelines set forth in the Procedures Manual for United States Magistrates nor the rules specifically applicable to trials before Magistrates which this Court has adopted within the framework of Rule 11 of the Magistrates Rules.

Nor does 28 U.S.C. § 547(1) *require* the presence of an Assistant United States Attorney at Glover's trial. Section 547(1) reads:

> Except as otherwise provided by law, each United States attorney, within his district, shall—

> (1) prosecute for all offenses against the United States * * *.

That section, however, does not relate to jurisdiction; rather, it is a delegation of authority to the United States Attorney and a definition of his duties. The predecessor of section 547(1) was 28 U. S.C. § 507 (1964), which read:

> (a) Except as otherwise provided by law, it shall be the duty of each United States attorney, within his district, to:

> (1) Prosecute for all offenses against the United States * * *.

██ The 1966 amendment substituting "shall" for "it shall be the duty of" worked no substantive change in the section. In Home News Publishing Co. v. United States, 329 F.2d 191 (5th Cir. 1964), the Court considered the claim that section 507(a)(1) and 5 U.S.C. § 310 (1964) established jurisdictional requirements. In that case, two attorneys for the Department of Labor actively handled the prosecution for the Government, although an Assistant United States Attorney was present during a small portion of the proceedings and maintained general out-of-court supervision of the case. The appellant in that case maintained that the trial had been conducted in violation of sections 310 and 507, and that that infirmity de-

---

5. 8A Moore's Federal Practice § 1.02[2] App. 30–31.

prived the trial court of jurisdiction. The Fifth Circuit wrote (at 193):

In the case of United States v. Denton, 6th Cir., 307 F.2d 336, the Court of Appeals there held that these provisions of the statutes are for the benefit of the Government. That decision cites United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507, where it was stated that the manifest object of these statutory provisions was for the protection of the Government in order to prevent persons otherwise engaged in performing these prosecuting services from having a claim against the United States for compensation.

Although the Court did not specifically decide the issue, it indicated that the disputed sections of the United States Code served only to prevent the prosecution of cases in the name of the federal government without the authorization of the United States Attorney. *Id.* at 193.

In United States v. Denton, 307 F.2d 336, 338–339, (6th Cir.), cert. denied, 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed. 2d 232 (1962), the Court considered the jurisdictional relevance of section 507 and related provisions, stating (at 338):

If the United States appear in a cause only through a special assistant, who has no authority, then the United States as a party may not be properly in court. * * *

Superficially, that language supports Glover's position. A close reading of other language in the case (*see* p. 339), however, reveals the ambiguity of the passage, and that the Sixth Circuit, apparently, was concerned only that suits brought by the Government be authorized by the United States Attorney's office. In the present case, a procedure which the United States Attorney has long sanctioned took place—a procedure pursuant to which a non-lawyer presented the Government's case and cross-examined the defendant. Since Congress seems to have enacted section 507 and its predecessor for the primary protection of the Government, and since the issue is one of practice and not of jurisdiction,[6] the provisions of that section do not require invalidation of Glover's trial. Nor does the decided case law lead to that result.[7] Both The Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L. Ed. 196 (1869), and United States ex rel. West v. Doughty, 25 Fed.Cas. p. 849, No. 14,986, 7 Blatchf. 424 (C.C.S.D.N.

**6.** *See* In re People, 231 App.Div. 303, 247 N.Y.S. 160, 166–167 (1931). Therein, the Court considered a contention that the suit was not properly before it since the Alien Property Custodian was represented by private counsel instead of by the United States Attorney.

**7.** The question arises in this case as to whether Glover waived his right to complain of the absence of an Assistant United States Attorney at his trial since he failed to make a contemporaneous objection. *See* Home News Publishing Co. v. United States, *supra*; United States v. Denton, *supra*; In re People, *supra* at n. 6. In Home News Publishing Co. v. United States, 329 F.2d at 193, *supra*, the Court stated:

While we do not construe the language of either the Crosthwaite case or the Denton case as holding that attorneys for the Department of Labor would have the power to appear before a Grand Jury to seek an indictment and to pursue the prosecution to a conclusion without the intervention of

a duly authorized United States Attorney or to file an information for the purpose of starting a prosecution and then continue throughout the prosecution without such intervention, we think they are enlightening to the extent that they indicate that a defendant may waive the strict requirements of the statute if they are not fully complied with.

In sum, we are not prepared to hold that the statute was not complied with in this case; if there was a failure fully to comply with it we then hold that there was not a proper objection and the failure of strict compliance was waived. We conclude, therefore, that the trial court had jurisdiction to proceed to judgment as it did.

In each of those cases, as in this case, the defendant was represented by counsel at trial. However, the view which this Court takes in this case renders it unnecessary to determine if the doctrine of waiver is applicable herein.

Y.1870), deal with the authority of private citizens to press cases on behalf of the Government. In The Confiscation Cases, the Supreme Court decided that an informant, who desired to collect a moiety in a libel proceeding involving the confiscation of ships sailing for the Confederacy, was not a party to the suit and was not entitled to be heard at any stage of the proceedings. In United States ex rel. West v. Doughty, *supra,* the Court dismissed the bill of complaint of a private person suing for the surrender of patents issued by the United States since the suit was not brought under the authority of the proper United States Attorney. In the present case, the proceedings before Magistrate Burgess were brought with the permission of the United States Attorney, and the only question is whether one of the members of his office was required to be present, and/or to conduct the prosecutor's case, at the trial.

In United States v. Denton, *supra,* the Court concluded that it was not impermissible for an attorney representing the Internal Revenue Service to participate actively in the conduct of a trial otherwise conducted by an Assistant United States Attorney. In Home News Publishing Co. v. United States, *supra,* two attorneys representing the Department of Labor actively conducted the trial. The Assistant United States Attorney who supervised the case was absent from the courtroom during most of the proceedings. The Sixth Circuit held that the trial procedure was proper.

In Figueroa Ruiz v. Delgado, 359 F.2d 718 (1st Cir. 1966), the First Circuit held unconstitutional a procedure in the Puerto Rico District Court pursuant to which the Commonwealth's witnesses took the stand at the request of the trial judge and were interrogated by him and pursuant to which counsel for the defendant conducted the cross-examination and the judge conducted a redirect examination limited in scope to the subject matter elicited on cross-examination. Further, under that procedure, the judge could cross-examine the defendant and his witnesses and could call prosecution witnesses for the purpose of rebuttal. Chief Judge Aldrich held that procedure incompatible with due process of law since the judge was both prosecutor and judge.

Under the procedure in the Puerto Rico District Court the judge must alternate roles [as prosecutor and judge] in rapid succession, or even assume both at once. Thus, when interrogating a witness he is examining for the people, but when listening to the answer to the question he has propounded, he is weighing it as judge, and at the same time considering what question, as prosecutor, to ask next. Correspondingly, when he listens to the answer to a question put by the defense, he must, as judge, impartially evaluate the answer, but, simultaneously, as prosecutor, he must prepare the next question for cross-examination. The mental attitudes of the judge and prosecutor are at considerable variance. To keep these two personalities entirely distinct seems an almost impossible burden for even the most dedicated and fairminded of men. [*Id.* at 720.]

Judge Aldrich also noted concern that the [j]udges of Puerto Rico were put in the position of assuming an *active* prosecutorial role at trial since the defendant usually had the services of counsel while the Commonwealth did not.

* * * If a defendant has counsel, and particularly if he has effective counsel, and the people have none, it would be a rare judge who did not, at least unconsciously, seek to set the balance. While he may not be the ardent, striving, advocate that the Commonwealth's brief envisages as a public prosecutor, if he has to see that justice is done for the people's cause, he must, to some extent at least, act as prosecutor. [Id.; footnote omitted.]

By way of contrast, the procedures complained of in this case did not put the Magistrate in the position of stepping in actively to protect the interests

of either the Government or the defendant. The Air Force sergeant conducted the prosecution while the defendant, through his counsel, was free to challenge the Government's case and to present the defendant's side of the case. A review of the file in this case reveals that the sergeant had thoroughly prepared his case, conducted himself quite ably, and that defense counsel vigorously cross-examined the two government witnesses, strongly and knowledgeably urged the legal contentions which he stated, and elicited clearly and thoroughly the testimony of the defendant and the two other witnesses who were called by the defendant. Further, the record reveals that Magistrate Burgess in no way acted other than as a judge. He asked few questions and did not act, in any way, as a probing prosecutor. The facts in the case are relatively simple and the evidence was presented by all of the witnesses in a straightforward manner. The atmosphere of the trial was courteous, dignified and unhurried. In sum, Glover received a fair trial and was sentenced in accordance with law. There is, therefore, no factual or legal basis in this case for this Court to do otherwise than to affirm the judgment of the Magistrate.

In so concluding, this Court notes that the defendant urges that this Court, in its supervisory capacity, should not permit a conviction by a Magistrate to stand in a case in which no member of the United States Attorney's staff was present at trial. While this Court, in a given case in which no government attorney took part, might hold that there was a lack of due process, and while the undersigned member of this Court might believe it advisable that in any case in which a sentence of confinement is imposable, the Government should be represented by an attorney, this Court cannot and does not reach that conclusion in this case under the present state of the law. Nevertheless, even while it is obvious that it would be costly to have members of the United States Attorney's Office prosecute many, if not all,

criminal cases before the Magistrates, it is important to note that the overwhelming majority of American citizens have contact with the criminal justice system only in reference to minor offenses, such as traffic offenses, which are usually tried by judicial officers who sit and preside in proceedings in which no government prosecutor participates. Judge Aldrich's underlying approach, if not his holding or exact words, offers strong support for the contention that justice, and its appearance, would be better served if the United States Attorney's Offices were sufficiently enlarged and funded to permit and require their participation as prosecutors in criminal proceedings before Federal Magistrates.

For the reasons set forth in this Memorandum and Order, the judgment herein is hereby affirmed.