**UNITED STATES of America**

v.

**Naho JAMES.**

**Crim. No. W–74–0698.**

United States District Court,
D. Maryland.

Nov. 17, 1977.

---

Jervis S. Finney, U. S. Atty. and William McC. Schildt, Asst. U. S. Atty., Baltimore, Md., for the District of Maryland, for plaintiff.

E. Allen Shepherd, of Upper Marlboro, Md., for defendant.

WATKINS, Senior District Judge.

Naho James noted this appeal from a judgment of conviction entered by a United States magistrate. The case arose when a United States Park Police officer arrested James and charged him with two traffic offenses[1] allegedly committed on the Suitland Parkway, which is within the special territorial jurisdiction of the United States. He was released on $100 bail and a trial date was set. He appeared for trial but requested and was granted a continuance. On the new trial date, the arresting officer appeared, although James apparently did not. The officer asked for another continuance, which was granted. After several unsuccessful attempts to locate the defendant, he was found and advised of the new trial date. Again he did not appear for trial, and a bench warrant was issued for his arrest. An additional complaint was filed charging him with failure to appear in violation of 18 U.S.C. § 3150.

Several months later, James was arrested in the District of Columbia. Following a hearing there, the case was removed to Maryland where he was advised of his rights, counsel was appointed, and bail was set at $2,500. Failing to make bail, he was incarcerated.

Trial was held before the magistrate October 22, 1974.[2] James was acquitted of speeding. His plea of guilty to the charge of driving without a license was accepted and he was fined $25. After pleading not guilty to the charge of failure to appear, he was tried and convicted. The magistrate imposed a sentence of one year's imprisonment, the maximum permitted, with eleven months suspended. With credit given for the time James spent in jail before trial, total time to serve was eighteen days. James then noted this appeal.[3]

James contends that the magistrate acted as both prosecutor and judge at the trial and thereby denied James due process of law. In his appeal memorandum, he summarizes the conduct of the trial as follows:

At the outset [of the trial], Sgt. H. H. Cooper, U. S. Park Police, sought to act as the Government's prosecutor, but the defendant objected. The Court sustained the defendant's objection and took over the conduct of the Government's case. The defendant, at a later time during the trial, objected to the Court's participation in the case as prosecutor as well as Judge, but defendant's objection was overruled.

. . . . .

[The magistrate actively participated] in the trial of this case in asking questions of the two Government witnesses on direct examination and his cross-examination of the defendant . . . ..

. . . . .

[T]here was no representative of the Government, and . . . . the Court sought to compensate for the absence of the prosecutor by asking questions of the Government's witnesses to establish the necessary elements to sustain the Government's burden of proof. In addition, the Court conducted a spirited cross-examina-

1. James was charged with driving without a license and speeding, in violation of Md.Ann. Code, art. 66½, §§ 6–101, 11–801, and 17–101, as made applicable by the Assimilative Crimes Act, 18 U.S.C. § 13 and 36 C.F.R. §§ 50.3b, 50.29a, and 50.31.

2. James signed a form entitled, "Consent to be Tried by United States Magistrate," by which he waived his right to be tried before a judge of

this Court, pursuant to 18 U.S.C. § 3401 and Rules 2 and 3 of the Rules of Procedure for the Trial of Minor Offenses before United States Magistrates.

3. Appeal bond was set after trial; there is nothing in the record indicating whether James made bail or served his sentence.

tion of the defendant in this case. The Court, at the same time, attempted to rule on the defendant's objections to certain items of evidence which the Court offered, and the Court received into evidence.

These unsupported allegations in James' unverified memorandum constitute all the information before the Court as to what actually happened at trial. No transcript was prepared. In accordance with James' written request, the proceedings were taped, but the tape recordings are totally inaudible except for a few minutes of the initial bail hearing. Responding to the absence of a record, the Government stated in its memorandum on appeal: "[F]or the purposes of this Answering Memorandum only, the Appellee must accept the Appellant's Statement of Facts as to the conduct of the trial and defendant's objections and Magistrate Burgess's rulings with respect thereto."

The Government contends that, even if James' account of the trial is correct, he has failed to show that his conviction should be reversed. By the above-quoted statement, however, the Government appears to have reserved the right to attempt to disprove James' allegations if this Court finds that grounds for reversal exist.

The Government's argument is, in essence, that the conduct of the magistrate at trial is irrelevant. The following rationale is offered in support of this conclusion: First, James can hardly be challenging his acquittal on the speeding charge. Second, having entered a guilty plea to the charge of driving without a license, he is in no position to complain about the trial with respect to that offense. Finally, as to the bail-jumping conviction, the Government argues that this offense was established sufficiently by the record in the case, and that the magistrate was entitled to take judicial notice of its contents. Therefore, "any examination of witnesses for the Government or any cross-examination of the defendant could only have been for the purpose of exonerating the defendant with respect to the charge of failure to appear." [4]

While the Government's reasoning with respect to the traffic charges is impeccable, its argument as to the charge of failure to appear lacks merit. The statutory definition of bail-jumping,[5] contained in 18 U.S.C. § 3150, includes willfulness as an essential element of the offense. The United States Court of Appeals for the Fourth Circuit has expanded on the type of factual showing required to establish this element. "Willfulness, like intent, can rarely be proved by direct evidence. Generally, it depends on the inferences that can reasonably be drawn from all the evidence . . . ." *United States v. Dorman,* 496 F.2d 438, 440 (4 Cir.), *cert. denied,* 419 U.S. 945, 95 S.Ct. 214, 42 L.Ed.2d 168 (1974).

■ It is difficult to imagine a case under § 3150 in which willfulness could be proved from the record alone. In any event, the record before the Court in the case at bar casts no light on whether James' failure to appear was willful. It does not indicate why he failed to appear; it shows only that the Defendant was notified of the new trial date, but failed to present himself on the appointed day. A conviction based solely on this record would require reversal because it would not be supported by substantial evidence. It follows that the bail-jumping conviction before the Court can be affirmed only on the basis of adequate evidence adduced at a properly conducted trial. It is thus necessary to decide whether, if James' allegations are correct, the magistrate's conduct undermined the fairness of the trial.

■ The leading case discussing the extent to which a judge may properly perform the function of an advocate for a party at trial is *Figueroa Ruiz v. Delgado,* 359 F.2d 718 (1 Cir. 1966), which dealt with a proce-

---

**4.** Further, the Government asserts that this Court may take judicial notice of the content of the record "for the purpose of affirming the decision below."

**5.** "Whoever . . . *willfully* fails to appear before any court or judicial officer as required, shall [be fined or imprisoned]." 18 U.S.C. § 3150 (emphasis supplied).

dure employed in the District Court of the Commonwealth of Puerto Rico. The Government furnished no prosecutors in that court; by statute, the judge was required to assume the trial functions which a prosecutor would normally fulfill.

> Although the statute is not in all respects clear, it is agreed that the Commonwealth's witnesses take the stand at the request of the trial judge, and are interrogated by him. They are then cross-examined by counsel for the defendant. Redirect, limited to what was brought out on cross, is conducted by the judge. Thereafter, if the defendant has witnesses, or chooses to take the stand, the examination in chief is conducted by his counsel. Cross-examination is conducted by the judge, and redirect by defendant's counsel. The judge can call prosecution witnesses for the purpose of rebuttal. Thereafter, there being no jury, the judge decides the case.

*Id.* at 719–20 (footnote omitted). This practice, established by statute in *Figueroa Ruiz,* is identical to the one allegedly adopted informally by the magistrate in the instant case.

The United States Court of Appeals for the First Circuit held that this procedure violated due process. The court first rejected the Commonwealth's contention that the statute did not require the judge to act as prosecutor. Unlike the right of questioning allowed federal trial judges, the participation demanded of a district court judge under the statute was not "ancillary," but "fundamental and continuous throughout the trial. Even more important, he [was] primarily motivated to speak only on one side." *Id.* at 720. In the court's view, the simultaneous performance of two roles required the district court judge to meet the "almost impossible burden" of maintaining

two mental attitudes "at considerable variance with one another." *Id.*[6] This double assignment could not help but impair the impartiality—or, just as important, the appearance of impartiality—essential to a fair hearing. *Id.* at 722; *see Wong Yang Sung v. McGrath,* 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616 (1950) (an administrative hearing not subject to basic procedural requirements, including separation of prosecutorial and adjudicative functions, might be in "constitutional jeopardy"); *cf. In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (a judge who, while acting as a "one-man grand jury" pursuant to state law, charged witnesses with contempt could not preside at their subsequent contempt trial without violating due process).

Two district court decisions in the First Circuit have followed *Figueroa Ruiz.* In *Palé De Méndez v. Aponte,* 294 F.Supp. 311 (D.P.R.1969), the court simply applied the holding in *Figueroa Ruiz* that the district court procedure violated due process. The other case, *Haley v. Troy,* 338 F.Supp. 794 (D.Mass.1972), was a declaratory judgment action brought by welfare recipients against a local municipal court justice. When women welfare recipients appeared before him in any matter, the justice allegedly made a practice of ordering them to sign non-support claims against their husbands or the fathers of their children. The justice then tried such complaints on the merits. Citing *Figueroa Ruiz,* the court held that such a merger of the functions of accuser and judge "injects an element of improper interest into the procedure and otherwise lacks the appearance of that degree of fundamental fairness essential to the concept of justice, and hence denies the accused in such cases due process of law." *Id.* at 804 n.2.

---

**6.** The court tempered its ruling with the following observations:

> Speaking from long contact with many trial judges, we appreciate that the public spirited and thoroughly impartial judge does not want innocent men to be convicted. Nor, however, does he want the guilty to go free. If a defendant has counsel, and particularly if he has effective counsel, and the people have

none, it would be a rare judge who did not, at least unconsciously, seek to set the balance. While he may not be the ardent, striving, advocate that the Commonwealth's brief envisages as a public prosecutor, if he has to see that justice is done for the people's cause, he must, to some extent at least, act as prosecutor.

359 F.2d at 720 (footnote omitted).

In *Wounded Knee v. Andera,* 416 F.Supp. 1236 (D.S.D.1976), a habeas corpus case which involved a procedure in the Sioux tribal court by which the tribal judge also served as tribal prosecutor,[7] the court followed *Figueroa Ruiz* and decided that "the concept of a fair trial . . . compels us to hold the system [employed by the tribe] violative of due process." *Id.* at 1241. Unfairness was inherent in the procedure. As the court observed, in such a situation, "[t]here is no unbiased arbiter between the tribe and the accused no matter how conscientious the 'judge' tries to be." *Id.*

Two state court decisions have also followed *Figueroa Ruiz.* In *Burhoe v. Whaland,* 116 N.H. 222, 356 A.2d 658 (1976), a case involving an administrative procedure, the court stated that "some combinations of the investigative, accusative, and adjudicative functions are constitutionally permissible," but also found that "the procedure followed in this case was improper because of a combination of circumstances." For example, "[t]he hearing officer presented the evidence which was the basis for the show cause order. He overruled the plaintiff's objection that the evidence was hearsay. He cross-examined the plaintiff and the plaintiff's employee when they testified." *Id.* at 225, 356 A.2d at 659. The court held that, although "[t]he authority of a trial judge to question witnesses is well established . . ., the constitutional guarantee of due process is violated when the hearing officer presents the case for one party, cross-examines the witnesses of the other party, and then decides the case." *Id.*

The same result was reached in the context of a juvenile dependency proceeding in *R. v. Superior Court,* 19 Cal.App.3d 895, 97 Cal.Rptr. 158 (1971), where the court opined: "It is not difficult to imagine the distress felt by a parent who finds the hoped for impartial arbitrator virtually presenting the case for depriving him of custody." *Id.* at 902, 97 Cal.Rptr. at 163.

Two opinions by Judge Kaufman of this Court also cast light on the question presented in the instant case. Both *United States v. Glover,* 381 F.Supp. 1139 (D.Md. 1974), and *United States v. Phillips,* Criminal No. 73–0353–K (D.Md., filed December 28, 1973), were appeals from convictions by a magistrate. In each, no assistant United States Attorney appeared at trial, and the prosecution was conducted by the arresting officer. The principal contention on appeal was that the absence of an attorney to represent the Government required reversal. After concluding in each case that such absence violated no rule or statute, the Court quoted at length from *Figueroa Ruiz* and then compared the procedures condemned there by the First Circuit with the procedures employed by the magistrate.

By way of contrast, *the procedures complained of in this case did not put the Magistrate in the position of stepping in actively to protect the interests of either the Government or the defendant.* The [officer] conducted the prosecution while the defendant, through his counsel, was free to challenge the Government's case and to present the defendant's side of the case. A review of the file in this case reveals that the [officer] had thoroughly prepared his case, conducted himself quite ably, and that defense counsel vigorously cross-examined the two government witnesses, strongly and knowledgeably urged the legal contentions which he stated, and elicited clearly and thoroughly the testimony of the defendant and the two other witnesses who were called by the defendant. *Further, the record reveals that Magistrate Burgess in no way acted other than as a judge. He asked few questions and did not act, in any way, as a probing prosecutor.* The facts in the case are relatively simple and the evidence was presented by all of the witnesses in a straightforward manner. The atmosphere of the trial was courteous, dignified and unhurried. In sum, [the

---

7. The specific issue was whether such a procedure violated due process "as guaranteed to Indian persons in 26 U.S.C. § 1302(8)." *Id.* at 1240. However, the holding, based largely on *Figueroa Ruiz,* was expressed simply in terms of "due process." *Id.* at 1241. The court's reasoning is thus fully applicable to constitutional due process.

defendant] received a fair trial and was sentenced in accordance with law.

381 F.Supp. at 1145–46 (emphasis supplied); *cf.* very similar language in *Phillips, supra,* slip op. at 11–12.

*Glover* and *Phillips* both hold that an arresting officer may prosecute a case tried before a magistrate. In the case at bar, the arresting officer was present; but, if James' account of the trial is accurate, the officer was not permitted to conduct the prosecution. Instead, it is alleged that the magistrate took upon himself the task of presenting the Government's case and became an active advocate for that party. *Figueroa Ruiz* and its progeny lead inescapably to the conclusion that, if the magistrate acted in this manner, James was denied due process of law. A trial at which one person acts simultaneously as prosecutor and judge is inherently unfair, and a judgment of conviction rendered under such circumstances cannot stand.

As pointed out above, the Government has apparently reserved the right to attempt to prove that James' account of the trial is not accurate. Although there is no usable official record of the trial, this Court could hold an evidentiary hearing for the purpose of establishing how the trial was conducted. The Government would then have an opportunity to rebut James' allegations. Numerous cases indicate, however, that when there exists no record of a criminal trial, an appellate court must reverse any conviction, at least where the reviewing court perceives a possibility that prejudicial error occurred. *See, e. g., Herron v. United States,* 512 F.2d 439 (4 Cir. 1975).

The decisions on this issue uniformly deal with appeals from district courts to courts of appeals, rather than from magistrates to district court judges; however, this is not a meaningful distinction. The appellate cases arising from district court trials were decid-

ed under 28 U.S.C. § 753(b), which applies solely to the district courts and requires recording "verbatim by shorthand or by mechanical means [of] all proceedings in criminal cases had in open court . . . ." Similarly, 18 U.S.C. § 3401, which authorizes magistrates to try minor offenses, requires proceedings in such cases to "be taken down by a court reporter or recorded by suitable sound recording equipment." 18 U.S.C. § 3401(e). Although no published opinions deal with the latter statute, recording of proceedings before magistrates would appear to be no less mandatory than the required recording of district court proceedings.

There is another distinction between the case at bar and those reported cases in which district court judgments of conviction were reversed because complete records were not available. Most of the cases decided under the district court reporting statute involved at least technical violations of the statute, *e. g.,* some or all of the proceedings were deliberately or accidently not recorded,[8] or the original records were, through the negligence of court personnel, not preserved for ten years as required by the statute.[9] In the case at bar, the proceedings were recorded and the recording is available; however, for some reason unknown to the Court, it is inaudible. Thus, there has apparently been at least technical compliance with 18 U.S.C. § 3401(e).[10]

The United States Court of Appeals for the District of Columbia dealt with a somewhat similar situation in *United States v. Robinson,* 148 U.S.App.D.C. 140, 459 F.2d 1164 (1972). In *Robinson,* the trial proceedings had been recorded, but the reporter's notes were stolen. The court pointed out that "[t]he mandatory language of the [district court recording] statute may have been at least literally complied with," *id.,* 148 U.S.App.D.C. at 147, 459 F.2d at 1171,

---

**8.** *E. g., United States v. Upshaw,* 448 F.2d 1218, 1222–24 (5 Cir. 1971); *United States v. Workcuff,* 137 U.S.App.D.C. 263, 422 F.2d 700, 701–02 (1970).

**9.** *Cf. Herron v. United States,* 512 F.2d 439, 441 (4 Cir. 1975) (no records could be found).

**10.** Nevertheless, it is perhaps questionable whether these inaudible tapes would have resulted if "suitable sound recording equipment" had been used.

and stated that "in the limited context of this case we are not prepared to hold that every inability to furnish complete reporter transcripts upon request is necessarily reversible error, especially in cases such as this where the unavailability of the transcript is not shown to have been the fault of either the court, the government, or the reporter . . . ." *Id.* Moreover, the court found that "a fair review upon appeal [had] not been frustrated" by the unavailability of a record. *Id.* The decision in *Robinson,* then, conforms well to the rule that the lack of a record does not necessitate reversal if the reviewing court is convinced that there is no possibility of error having occurred at trial. *See United States v. Snead,* 527 F.2d 590 (4 Cir. 1975).

In contrast, there is a strong possibility in the instant case that the trial was fatally defective, and fair review upon appeal, if not frustrated, has at least been rendered far more difficult and far more uncertain by the lack of a record. It can only "result in unnecessary post-conviction hearings to determine what was done when the most accurate record is a transcript of what actually took place." *Herron v. United States,* 512 F.2d 439, 441 (4 Cir. 1975). Where an appeal may be prejudiced because a record is not available, there is no reason to draw a distinction based on whether there was literal compliance with the applicable recording statute. The appellant in such a case would be no less injured if court personnel were not at fault. As the court in *Robinson* noted, "a stilted interpretation of the statute could defeat its very purpose—to make available to litigants, their attorneys, and the court when needed an accurate record of the proceedings, to remove uncertainty and speculation and to protect the rights of litigants." 459 F.2d at 1171 (footnote omitted).

Accordingly, the judgment of the magistrate is reversed and the case remanded for further proceedings as to Count III.